## The inhabitants of the town of LITCHFIELD *against* The inhabitants of the town of FARMINGTON.

Though the putting of a letter into the mail, is made, by the act for the support of paupers, sufficient evidence that notice was given ; yet the fact of putting such letter into the mail is to be proved, and is open for examination, like any other fact.

Therefore, where the town of *L.*, plaintiffs in an action for the support of a pauper, against the town of *F.*, introduced a witness, who testified, that on the 18th of *June*, 1824, he deposited in the post office at *L.*, a letter direct-ed to the selectmen of *F.*, informing them of the condition of the pauper ; and to repel this proof, the defendants offered *B.* and others, selectmen of *F.*, to prove, that no such letter was received by them, during the year 1824 ; it was held, that the latter evidence was relevant and admissible.

So too, where the defendants, for the same purpose, offered in evidence the books and accounts of the post offices at *L.* and *F.*, from which it did not appear, that any letter was sent from the office at *L.* to that at *F.*, or re-ceived at the office at *F.* from that at *L.*, in the month of *June*, 1824 ; it was held, that this evidence was relevant and admissible.

Where the plaintiffs in such action, to shew that a tax had been laid against the pauper, by the town of *L.*, adduced in evidence the list and tax-book of that town, from which it appeared, that a tax was laid against " *Asahel Moss 2nd ;*" and it was claimed by the defendants, that the pauper's real name was *Asahel Morse ;* and the jury, under the direction of the court, found, that these names designated the same person ; it was held, that the pauper was thereby sufficiently identified to render him liable for the tax, and that the evidence was admissible.

By the statute providing for the support of paupers, as revised in 1821, the non-payment of taxes does not prevent the gaining of a settlement by six years' residence ; but the resident, for that neglect, is liable to be removed.

THIS was an action of *assumpsit*, brought *December* 5th, 1826. The declaration comprised two counts : the first spe-cial, for the support of *Asahel Moss* and family, from the 20th of *May* 1825 to the 1st of *July* 1826 ; the second, general *indebitatus assumpsit.*

The cause was tried, on the general issue, at *Litchfield, Feb-ruary* term 1828, before *Peters*, J.

*Reuben Webster*, a witness introduced by the plaintiffs, who, at the time the relief was furnished, was one of the select-men of the town of *Litchfield*, testified, that on the 18th of *June* 1824, and within five days after the commencement of

the expenditures for one of the paupers, he deposited in the post office in *Litchfield*, for transmission by mail, a letter, signed by him as such selectman, directed to the selectmen of *Farmington*, informing them of the pauper's condition, stating his name, and that he was chargeable in the town of *Litchfield*. The defendants then offered *George Cowles* and others, selectmen of *Farmington*, for the year 1824, to prove that no such letter as that testified to, by *Webster*, nor any letter relating to this pauper, was received, by them, or either of them, during the year 1824. To this evidence the plaintiffs objected ; and the judge rejected it

The defendants also offered in evidence certain books and papers, which they claimed were records kept at the post office in *Farmington*, by the postmaster, of all letters received at that office ; which records, as the defendants claimed, contained no account of any letter received at that office, from *Litchfield*, during the month of *June* 1824. On the objection of the plaintiffs, the judge rejected this evidence. The defendants then offered to read in evidence certain books and papers, which they claimed were accounts and records kept at the post office in *Litchfield*, by the postmaster, of all mails made up and letters sent from that office ; from which accounts and records, as the defendants claimed, it did not appear, that any letter was sent by mail from that office to *Farmington*, at any time during the month of *June* 1824. This evidence, also, the judge, on the objection of the plaintiffs, rejected.

It was agreed between the parties, that *Asahel Moss*, mentioned in the first count, removed with his family from *Farmington* to *Litchfield* sometime between the 15th and 20th of *April* 1817 ; that at the time of his removal into *Litchfield*, he was a legally settled inhabitant of *Farmington ;* that he resided in *Litchfield* for the full period of six years next after his removal into that town, without becoming chargeable ; that the supplies for which the plaintiffs claimed to recover, were in fact furnished by them, for the support of *Moss* and his family ; that *Moss* and his family, at that time, were paupers, in need of the relief furnished ; that due notice, both of the condition of these paupers, and of the expenditures incurred, had been given to the defendants, and demand of payment made. The defendants did not claim, or offer any testimony to prove, that *Moss* had gained a settlement in *Litchfield*, in any other way than by commorancy. The plaintiffs claimed, that *Moss* had

*Litchfield,*
June, 1828.

Litchfield
*v.*
Farmington.

*Litchfield,*
*June, 1828.*

*Litchfield*
*v.*
*Farmiugton.*

failed to gain a settlement in *Litchfield,* because he had not paid all the lawful taxes assessed against him, during said period of six years, within the time by law prescribed for payment ; and adduced evidence to prove, that the inhabitants of *Litchfield,* in a town meeting held on the 10th of *November,* 1817, laid a town tax of three cents on the dollar. on the list of 1817 ; and that *Charles Buck* was appointed collector.   And to prove that a town tax was laid against *Moss,* upon the list of 1817, the plaintiffs read in evidence the grand list of the town of *Litchfield* of that year, and also the tax-book and warrant made out thereon and delivered to the collector, in which, as the plaintiffs claimed, a tax was laid against the pauper *Moss,* designated in the list and tax-book by the name of " *Asahel Moss 2nd.*" The plaintiffs also adduced evidence to prove, that at the time when such list and tax-book were made up, there was residing in *Litchfield* another person, by the name of *Asahel Moss,* and that the addition " 2nd " to the name of the pauper, was made for the purpose of distinguishing him from the other person of the same name ; and that the person designated in the list and tax-book as " *Asahel Moss* 2nd," was the same person who removed from *Farmington,* and to whom the supplies were furnished    There was also evidence to shew, that the tax was duly demanded of this person, by the collector, and that he had never paid it.   The defendants introduced evidence to prove, that the pauper's real name was *Asahel Morse ;* and thereupon prayed the judge to charge the jury, that if they should so find, that they must also find, that the tax in question was not a legal tax against the pauper.

The plaintiffs also adduced evidence to prove, that the pauper had neglected to pay, within the time prescribed for payment, after due demand made by the collector, a town tax, laid by the town of *Litchfield,* on the 1st of *November,* 1821, upon the list of 1821, and payable to the collector, on the 1st of *May,* 1822.

The judge charged the jury, that if they should find, that *Asahel Morse* was the same person as *Asahel Moss 2nd,* and that said *Moss* had neglected to pay, within the time prescribed for payment, any lawful tax against him, payable by him within said period of six years from the time of his first removal into the town of *Litchfield,* demand having been duly made, they must find that the pauper had gained no settlement in *Litchfield ;* and as all the other allegations in the first count

were admitted by the defendants, their verdict must be for the plaintiffs.

The jury returned a verdict for the plaintiffs; and the defendants moved for a new trial, on the ground that the evidence offered by them, was improperly rejected, and that the charge was erroneous.

*J. W. Huntington* and *O. S. Seymour,* in support of the motion, contended, 1. That evidence that no letter was received, by the select-men of *Farmington,* and none received at the post-office in *Farmington,* and none sent from the *Litchfield* post-office, ought to have been admitted, to shew, that Mr. *Webster* was mistaken in his testimony. It was not competent to the judge to decide, that that testimony conclusively proved the fact of notice, or that a letter was put into the post-office at *Litchfield.* If the evidence was of any weight to disprove, counteract or discredit *Webster's* testimony, it was relevant and admissible. Suppose that *A.* swears, that he sent a letter by *B.* to *C.;* may not *B* be permitted to swear, that he received no such letter to carry, and that he kept a strict account of all letters received by him to carry, and that no such letter appeared in his account. Suppose a merchant in *New York* swears, that he sent certain goods, previously ordered, by the steam-boat *Macdonough* ; may not the captain of the *Macdonough* swear, that such goods were never sent by him, and that he kept an account of all goods sent by him, and among them these goods were not to be found?

2. That if *Moss 2nd* and *Morse* are different names, no evidence was admissible to explain the tax books, and shew, that *Moss* 2nd was *intended* for *Morse* ; and of course, the charge of the judge to the jury, that if they should find that the tax was *intended* for *Morse,* they might treat it as a legal tax against him, was incorrect. *Grant* v *Naylor,* 4 *Cranch* 224. 235, 6. This is not the case of a man having originally one name, shewing that he had gained another name by reputation; but it is an attempt to shew, by parol, what the tax books *meant.* *Cole* v. *Hindson* & al. 6 *Term Rep.* 234. *Scandover* & al. v. *Warne,* 2 *Campb.* 270.

3. That *Morse* and *Moss* 2nd are different names. They are written differently, and they are not *idem sonans.* *The King* v. *Shakespeare,* 10 *East* 83. *The King* v. *Westly,* 10 *East* 85. n. The addition of "2nd," if the names were other-

wise alike, would designate a different person. *De Kentland* v. *Somers,* 2 *Root* 437. *The Commonwealth* v. *Perkins,* 1 *Pick.* 388. *Commonwealth* v. *Hall,* 3 *Pick.* 262. *Morse* might well object to this tax, and say : " My name is *Asahel Morse.* You have got a tax against *Asahel Moss* 2nd. Go and collect the tax of him."

4. That the non-payment of taxes, which became due after the 1st of *January* 1822, when the revised statutes took effect, does not prevent a settlement, by six years commorancy. To this point the express provisions of the 3d and 4th sections of our statute of settlements, are conclusive. *Stat.* 280. It is true, that during the commorancy, the pauper is liable to removal. But the object of giving the power to remove, is, *prima facie,* to prevent a settlement. Such is the object of the *English* statute of removal. The inference, therefore, is almost irresistible, that if the pauper is not removed, he gains a settlement. *Tolland* v. *Lebanon,* 1 *Root* 398.

It may be said, that the power to remove is *indefinite,* and therefore always exists ; and if it always exists, there can be no settlement. But courts will not strain language to make a statute contradict itself. The two parts can be construed so as to harmonize, by considering the power of removal to exist until a settlement is gained, and no longer. Besides, the construction which this objection requires, makes that which is implied and argumentative, destroy that which is express; whereas if there be a contradiction, the contrary is the clear rule. This construction, moreover, leads to absurdity, as it will go the length of determining, that in case of an estate purchased, &c. no settlement is gained, unless taxes are paid.

It may be urged, that the new statute is *prospective,* and that there must be a residence of six years under that statute, or six years under the old statute ; and that the time before the new statute went into operation and the time since, cannot be tacked together. But the confirming act (*Stat.* 485 ) has provided for this precise case. That act provides, that where the new revision literally or substantially corresponds with the old, so far as they do thus correspond, the new shall be considered as *ante-dated,* and to have continued in force from the time when first enacted. The revision, then, so far as the statutes are the same, operates merely as a continuance of the old law, and so far as they differ, the general repealing clause abrogates the old statute.

*Bacon* and *Sanford*, contra, contended, 1. That the evidence offered by the defendants relative to the transmission of notice, was properly rejected. In the first place, no evidence was produced to shew, that the books and papers offered were in fact what the defendants claimed them to be, *viz.* records containing accounts of all letters sent and received. The *claim* of the defendants, without any evidence to support that claim, did not entitle them to have these papers considered as " records," and still less as records of " all letters sent and received."

Secondly, both the books and the testimony of the select-men were inadmissible, because both were *irrelevant.* The 5th section of the statute provides, that a letter containing notice put into the mail, shall be sufficient evidence of notice at the time the letter would reach the post-office in the place to which it was directed, in the usual course of the mail. The putting of the letter into the post-office for transmission by mail, was a full compliance with the law. Whether it ever reached the defendants or not, is totally immaterial.

Thirdly, these papers were not the best evidence. They contained the entries of third persons, unsupported by the obligation of an oath. The post-masters ought to have been introduced and sworn ; and they might then have referred to their entries to refresh their memories. 1 *Stark. Ev.* 305.

Fourthly, The evidence in question was inadmissible for the purpose of disproving the fact that the letter was put into the *Litchfield* post-office. This is, if any thing, presumptive evidence. The defendants propose to have the jury infer one fact from another to be proved, *viz.* from the fact that the letter was not entered in the books of the *Farmington* post-office in *June* 1824, nor received by the select-men in the year 1824, that it was never put into the *Litchfield* post-office. But to authorize such an inference, the connexion between these two facts must be shewn. 3 *Stark. Ev.* 1234, 5. There is no natural connexion between them ; and he who claims the benefit of such a presumption, must shew how it arises—must discover the dependence of one fact upon another. But upon this point the motion is entirely silent ; and this court cannot discover it. It does not appear, that the defendants proved, or even claimed, that in the ordinary course of business, any mail for *Farmington* left the *Litchfield* post-office, after the 18th of *June*, during the residue of that month ; or if it did, that it would, in the ordinary course of the mail, reach the *Farming-*

ton post-office in that time ; nor in the residue of the year 1824 ; nor that either of the select-men of *Farmington* ever enquired at the office for letters ; nor that they had, or were in the habit of having, any communication whatever with the post-office. All these are the connecting links between the fact proposed to be proved and the inference to be raised— links without which the connexion fails.

2. That the evidence of the non-payment of the tax of 1821, was properly admitted. The objection to this evidence is founded on a supposed alteration of the law in 1821, in consequence of which payment of taxes, at the time this tax became payable, was not necessary to the gaining of a settlement. But the law was not altered at the revision. The revised act consisted of two separate acts ; the old statute as it existed in the edition of 1808, and the act of 1810. It was the manifest object of the legislature of 1821 to incorperate these two acts in one. Under the statute of 1821, as well as under the former acts, the person removing can gain no settlement without the payment of taxes, because he is liable to be removed. Such is the construction put upon the act, by Judge *Swift.* 2 *Swift's Dig.* 820.

But if the law is materially altered, and if under the statute of 1821 payment of taxes is not necessary to the acquisition of a settlement, still the evidence was not properly admitted, because the statute is *prospective* only, and this case does not fall within the scope of its provisions. The phraseology of the section is expressly and exclusively prospective. But were it otherwise, no act is to receive a retrospective operation by construction. *Goshen* v. *Stonington,* 4 *Conn. Rep* 211.

Further, the statute of 1810 provides, that no such person shall gain a settlement, who shall have neglected to pay any of the lawful taxes which *may have arisen* against him while so residing within the time prescribed for payment thereof. This tax *had arisen* against the pauper before the statute of 1821 went into operation. It was laid on the 1st of *November* 1821, upon the list of 1821. He became immediately charged with it, and could exonerate himself from it in no way but by payment. When it became *payable, by the collector,* into the treasury, is immaterial.

3. That the charge of the Judge was unexceptionable. First, as to the name of the pauper. The question left to the jury was, whether both names designated one and the same

person.   This was the proper enquiry, as the only use of a *Litchfield*, name is *designatio personarum ;* and being a mere matter of June, 1828. fact, it was properly referred to the jury.   This Court cannot now know, that the names are different.   The addition " 2nd" is mere description, and no part of the name.   It was placed there merely as a directory to the collector.   Then *Morse* and *Moss* are the same name ;—the same in sound, in origin and in common use.   *Petrie* v. *Woodworth,* 3 *Caines* 219.

Secondly, The charge is equally unexceptionable upon the remaining point.   The reasoning upon the admissibility of the evidence relating to the tax of 1821, is applicable also to this point.   If the law was not altered at the revision, non-payment of any tax within the whole period of six years, would have prevented the acquisition of a settlement.   But if the law was altered, this case does not fall within the operation of the new law, for the reasons before suggested.

DAGGETT, J.   The first ground stated for a new trial, is, that the testimony of *George Cowles* and others, selectmen of *Farmington,* that they had received no letter from *R. Webster,* during the year 1824, ought to have been admitted.

The 5th sect. of the statute providing for the support of paupers, (*page* 370.) declares it to be the duty of the selectmen of every town, wherein a person not an inhabitant of such town, residing therein, shall become poor and unable to support him or herself, to furnish necessary support ; and if the pauper belongs to any other town, to give notice of his condition to such town within a certain number of days.   It also declares, that *a letter put into the mail* stating the name of the pauper, and that he is chargeable, signed by one of the selectmen of the town wherein he resides, directed to the selectmen of the town where he belongs, shall be *sufficient evidence* that notice was given, &c.   The plaintiffs, on the trial of the issue joined, introduced *R. Webster,* a selectman of *Litchfield* in 1824, who testified, that on the 18th of *June* 1824, he deposited in the post office at *Litchfield,* a letter directed to the selectmen of *Farmington,* informing them of the condition of one of the paupers mentioned in the declaration.   To repel this proof, the defendants offered *George Cowles* and others, selectmen of *Farmington,* to testify, that no such letter was received by them, or either of them, during the year 1824.   An objection was taken, by the plaintiffs, to the admission of these witnesses.

and they were rejected.   I think the testimony ought to have been received ; and that it was rejected from a misapprehension of the true construction of the act mentioned.   The statute does indeed declare, that a letter *put into the post office* according to the direction therein given, shall be deemed *sufficient evidence* that notice was given of the condition of the pauper, &c. ; but whether such letter *was put* into the post office, is a question of fact, to be ascertained by proof.   It is open for examination, like any other fact ; and being proved, the statute renders it *sufficient evidence.*   The statute does not declare, that if a selectman *shall testify,* that he put a letter into the post office, &c. the other party shall be concluded by his oath.   His oath is not in the nature of evidence by record, " importing absolute verity "

The only doubt that can here arise, is, was the testimony *relevant ?*   Did it tend, *in any degree,* to repel the testimony of *Webster ?*   It surely was not illegal ; and it would be too much to say, that the testimony of these selectmen might not induce a jury to believe, that there was some mistake in relation to putting the letter into the post office ; as in its direction. If so, it was proper to be left to the jury ; and hence improperly rejected by the court.

2.  Another ground of new trial, is, the rejection of the proof arising out of the papers, books, &c. of the post offices of *Litchfield* and *Farmington,* that no such letter was sent or received in the month of *June,* 1824.   This evidence was of a still higher nature, and therefore more entitled to the attention of the jury.   But an objection is here raised, that it does not appear, by the motion, that these papers, &c. were accompanied with evidence, that they were the records of these offices of all letters sent and received.   This objection, according to the decision of this court, that he who objects to the opinion of the judge in a question of testimony, ought to show on the face of his motion, that it was proper evidence, is deserving of consideration.   As the first ground, however, is sufficient, it is unnecessary to decide this point.

3.  Another reason for a new trial is urged, *viz.* that the taxes mentioned in the motion, were in the tax-books, set against *Asahel Moss,* and not against *Asahel Morse.*   I think the judge placed this point in its proper light to the jury.   He instructed them, that if the pauper was intended by the name, *Asahel Moss,* a name sounding very like *Asahel Morse,* then

the objection ought not to prevail.　Great strictness is required *Litchfield,* in the description of records, in names in indictments, and June, 1828. other criminal proceedings, and slight errors are fatal in questions of variance.　*The King* v. *Shakespeare,* 10 *East,* 83. 85. *Gordon* v. *Austin* & al. 4 *Term Rep.* 611.　*Coole* v. *Hindson* & al. 6 *Term Rep.* 234.　But this misnomer, if so it may be called, stands on different ground.　If the pauper was sufficiently identified to render him liable for the tax, then the statute attached upon him ; and in my opinion, he was so identified.

Litchfield<br>v.<br>Farmington.

4　A more important question arises on the construction of the 3d and 4th sections of the statute, *tit.* 51. Inhabitants. *p.* 280.　Under that statute, can a person removing from one town to another, gain a settlement in the town to which he has removed, and in which he has resided six years, not having been chargeable to the town, nor removed therefrom, but having neglected to pay the taxes assessed and demanded ?　This act was passed in 1821.　In 1810, an act was passed on this subject as follows :—" No person, who is an inhabitant of any town in this state, shall, in virtue of the six years residence in any other town in this state mentioned in the 4th section of the act to which this is an addition, (ed. of 1808. *page* 390 ; gain a legal settlement in the town to which he may have so removed, who shall have neglected to pay any of the lawful taxes which may have arisen against him, while so residing, within the time prescribed for payment thereof; and if any such person shall, at any time before the expiration of said term of six years, and within the time prescribed for the payment of such taxes, demand having been first made of him by the collector thereof, neglect or refuse to pay the same, in that case every such person, with his or her family, if any be, may be removed to the place of his or her last legal settlement, &c."　It is observable, that this statute absolutely forbids the *gaining a settlement,* if the taxes remain unpaid, having been demanded.　In 1821, the legislature, with the enactment of 1810 in full view, passed the act under consideration, and repealed that of 1810.　By the 3d section of the act now in force, it appears how a legal settlement can be gained, or rather, it declares that a settlement shall not be gained, unless the person have some one of the requisites enumerated in the first section, or have been possessed of a real estate of the value of 100 dollars, while he continued in the town to which he has removed, or has sup-

*Litchfield,*
June, 1828.

Litchfield
*v.*
Farmington.

ported himself for six years. His non-payment of taxes, as a prohibition of gaining a settlement, is dropped, and the language employed provides only, that he, *for that neglect, may be removed,* &c. It thus appears, that the law of 1810 is substantially altered, in this particular, by the law of 1821. By the latter act, the town must *remove the person* within the six years, and thus prevent a settlement in cases where taxes are not paid. I do not feel at liberty to construe the language of the legislature otherwise. But the counsel for the plaintiffs insist, that this act is not to be construed so as to have a retrospective effect. If *A. B.* had removed from *C.* to *D.,* on the 1st of *January* 1818, while the act of 1810 was in force, and there remained till the 1st of *January* 1824, without having become chargeable, though he had not paid taxes demanded after *January* 1822, (when the law went into operation,) he has become settled in *D.* If so, the non payment by the pauper, of the tax of 1821, payable the 1st of *May* 1822, as stated in the motion, did not affect the question of settlement; and therefore, the charge of the judge, that if *any* of the taxes, including that of 1821, remained unpaid, after demanded, *Morse,* the pauper, had not gained a settlement in *Litchfield,* was incorrect. On the first and last ground, I would grant a new trial.

The other Judges were of the same opinion, except BRAINARD, J., who was absent.

New trial to be granted.