### COIT *against* STARKWEATHER.

A material alteration of a deed, by consent of parties, after it has been executed and acknowledged, will be inoperative, without a new attestation by two witnesses, and a new acknowledgment before a magistrate.

The addition of *junior* to a man's name, is adopted as a convenient term of designation, but is not a part of the name.

Where a deed is executed to a person named therein, of a certain town; and it is shewn, that there are two persons of that name, father and son, residing in such town; this is a case of latent ambiguity, and parol evidence is admissible to shew which of those persons was intended as the grantee.

Therefore, where a deed was executed to *E. W.* of *P.*; and it appeared, that there were, at that time, two persons named *E. W.*, father and son, residing in *P.*, the father being called *E. W.*, and the son *E. W.* jun.; parol evidence was introduced to show, that the negotiation was with the son, that the deed was intended for him and that it was delivered to him; and these facts being thus proved, it was held, that the title was transferred, by such deed, to the son.

THIS was an action of ejectment, for a tract of land in *Plainfield*, tried at *Brooklyn, January* term, 1830, before *Hosmer*, Ch. J.

On the 15th of *February* 1815, *Manuel Kinne*, being owner in fee simple of the tract of land in controversy, executed a deed thereof to *Elijah Wheedon* by name, and delivered it to *Elijah Wheedon*, jun., who caused it to be recorded. The negotiation was between *Kinne* and *Elijah Wheedon*, jun., and the deed was intended for his benefit. At this time, and for some months afterwards, *Elijah Wheedon* jun. resided in *Preston*, being there known and designated, by the name of *Elijah Wheedon* jun.; and at the same time, his father resided in the same town, being known and designated by the name of *Elijah Wheedon.* Some time between the recording of the deed and *April*, 1815, it was discovered, that the word *junior* was omitted in the deed; and *Kinne*, with the assent of *Elijah Wheedon* jun., carried the deed to one of the subscribing witnesses, the other not being present, and requested him to insert *junior* after the name *Wheedon*, wherever it occurred in the deed; which he accordingly did. *Kinne* then took the deed to the town-clerk of *Plainfield;* and on his request, the record was altered in conformity to the alterations in the deed. After this, *Kinne* delivered the deed to *Elijah Wheedon* jun. There was no acknowledgment of the deed before a magistrate, subsequently to the alterations. On the 11th of *December* 1828, *Elijah Wheedon* jun., by the name of *Elijah Wheedon*, his father being then dead, executed and delivered to the plaintiff a deed of the land in question.

On these facts, the plaintiff insisted, first, that the deed of

*Kinne* to *Elijah Wheedon* by name, was, in contemplation of *Windham,* law, a deed to *Elijah Wheedon,* jun. ; and secondly, that the alterations in the deed, made by assent of the parties, were authorized, and the title was thereby vested in *Elijah Wheedon* jun. On the other hand, the defendant contended, that the word *junior* was an essential part of the description of *Elijah Wheedon* jun., and that in legal construction, the deed was made to *Elijah Wheedon,* the father. And as to the alterations, he insisted, that they could not be legally made, unless by a reexecution of the deed before witnesses and an acknowledgment of it before a magistrate. The court charged the jury, that in construction of law, the deed of *Kinne* was made to *Elijah Wheedon,* and not to *Elijah Wheedon* jun. ; and that the alterations, being material, made the instrument a new deed, which, without a new attestation by witnesses and new acknowledgment before a magistrate, was, by our statute, invalid.

*Windham,*
July,1830.

Coit
*v.*
Starkweather.

The defendant had a verdict ; and the plaintiff moved for a new trial for a misdirection.

*Goddard,* in support of the motion, contended, 1. That the alteration of the deed, being made by consent of parties, did not render it void. *Perk. sect.* 118. 122. 124. 126. 127. 128. *Pigot's* case, 11 *Co.* 27. *a.* S. C. 2 *Bulst.* 246. An alteration by the obligor himself, in a material place, does not avoid the deed. *Com. Dig. tit.* Fait. F. 1. So if a material alteration be made, by consent of the parties interested therein, it does not avoid the deed. *Ibid.* cites 2 *Lev.* 35. *Zouch* v. *Clayes.* In *Woolley* & al. v. *Constant,* 4 *Johns. Rep.* 54. it was also decided, that a deed, after it has been executed, may be altered in a material part, with the consent of the parties, without affecting its validity. In *Penny* v. *Corwithe,* 18 *Johns. Rep.* 499. the same doctrine was recognized. The following cases also sanction this doctrine. *Hunt,* admr. v. *Adams,* 6 *Mass. Rep.* 519. *Hatch* & al. v. *Hatch* & al. 9 *Mass. Rep.* 307. *Cutts* v. *United States,* 1 *Gallis.* 69. 71. *Speake* & al. v. *United States,* 9 *Cranch* 28. *Matson* v. *Booth,* 5 *Mau. & Selw.* 223. *Doe* d. *Lewis* v. *Bingham,* 4 *Barn. & Ald.* 672. *Doe* d. *Beanland* v. *Hirst,* 3 *Stark. Rep.* 60.

2. That the deed was good and effectual to convey the title to the real grantee,—the person who bargained for the land, and to whom the deed was delivered,—without any alteration ; and consequently, the alteration made, was *immaterial.* This

*Windham,*
July, 1830.

Coit
*v.*
Starkweather.

person's name was *Elijah Wheedon;* and the fact that there was another person in the same town of the same name, did not alter the grantee's name ; nor did the circumstance that such other person was the father of the grantee, make any difference.    The addition of *junior* or *younger* to a man's name, is frequently a convenient mark of discrimination ; and so a civil or military title may be ; but in neither case, is the addition or the prefix any part of the name.    In the absence of such mark of discrimination, parol evidence may be introduced to shew the identity of the *Elijah Wheedon* named in the deed, and the *Elijah Wheedon* claiming under it ; the ambiguity being *latent.*    As it arises from extrinsic evidence, it may be removed, by the same sort of evidence.    3 *Stark. Ev.* 1021. 1025. and the cases there cited, particularly, the strong case of *Beaumont* v. *Fell,* 2 *P. Wms.* 141.    See also, Dr. *Ayray's* case, 11 *Co.* 21.    *Jones* v. *Newman,* 1 *Bla. Rep.* 60.    *Jackson* d. *Shultze* & al. v. *Goes,* 13 *Johns. Rep.* 518.    *Jackson* d. *Woodruff* & al. v. *Cody,* 9 *Cowen* 140. 148.

*Strong* and *Judson,* contra, contended, 1. That the parties to the deed in question must be ascertained from the deed itself. In this state, whenever a father and son of the same *christian* name, reside in the same town, the son is uniformly designated by the word *junior* being added.    If, therefore, a deed be given to *Elijah Wheedon* of *Preston,* no latent ambiguity is brought to light, by proof that he has a son *Elijah Wheedon* jun. of *Preston.*    This is not a case of two persons having the *same name.*    If the deed was intended for the son, the omission of the word *junior,* is a mistake of the same character, as if when intended for *Elijah Wheedon* jun., it had been written *Charles Wheedon* jun.    This may be corrected in a court of chancery ; but not in a court of law.    *De Kentland* v. *Somers,* 2 *Root* 437.    *Wilson* v. *Stubbs, Hob.* 330.

2. That the legal effect of the deed being varied, by its alteration, the deed given in evidence had not been attested by two subscribing witnesses, nor had the grantor acknowledged it to be his free act and deed : consequently, it was inoperative ; the statute evidence of a transfer of the property did not exist.

DAGGETT, J.    In this case, one point raised in argument, may be disposed of very readily.    Did the alteration in the deed,

after it had been executed and recorded, by inserting the word *Windham,*
"junior," render it valid? It is quite clear, that the alteration    July, 1830.
attempted could have no operation. If, by consent of parties,    ————
a deed, where no attestation of witnesses, nor acknowledgment    Coit
before a magistrate, is required, would be good at common law,    *v.*
where no third person is to be affected, as it unquestionably    Starkweather.
would be, still *this* alteration could not have any effect. It is
a positive requirement of our law, that all deeds of land shall
be attested by two witnesses, and acknowledged before a ma-
gistrate. *Stat.* 301, 2. No such deed can be valid without a
compliance with these requisites. It follows, that if the altera-
tion be material, the deed is fatally defective, without a new at-
testation and acknowledgment.

But in my opinion, the alteration is immaterial; and the deed
is good. This is the only point of any importance. It seems,
that there were two men, father and son, inhabitants of *Preston,*
by the name of *Elijah Wheedon.* The elder was called *Elijah
Wheedon;* the younger, *Elijah Wheedon* junior. They bore
the same baptismal name, and the same surname. To distin-
guish them, they were called *Elijah Wheedon* and *Elijah
Wheedon* jun. They might, with the same propriety, have
been distinguished, by the name of *Elijah Wheedon* sen., and
*Elijah Wheedon.* By adding the description *senior* to the name
of the father, it would be unnecessary to distinguish the son by
the addition of *junior.* These additions are, in their nature,
temporary. They are adopted for convenience. Any other
description might, with equal propriety, be substituted. They
are, in no sense, any part of the name.

There were two gentlemen, many years ago, in *Norwich,* by
the name of *Benjamin Huntington.* Both of them were ma-
gistrates, and both entitled to the addition of Esquire. One
was usually called *Esq. Ben;* and the other, *Esq. Ben at-the-
corner,* because he lived at an angle of two streets. Two gen-
tlemen resided many years in *New-Haven,* of the same chris-
tian and surname; one of them an eminent physician, the oth-
er a distinguished lawyer. Neither *senior* nor *junior* was ever
affixed to either of their names. It is a matter of great notori-
ety, that such instances are of frequent occurrence in all our
large cities. What is to be the condition of wills, deeds, bonds,
and other securities made to a man named *John Smith,* when
there are twenty of that name residing in the same city? Are
such instruments to be inoperative? In all such cases, the

*Windham,*
July, 1830.

Coit
*v.*
Starkweather.

principle is resorted to and applied, that where there is a latent ambiguity, and that is shown to exist, by parol evidence, the same species of testimony may explain it. Thus, a deed or bequest is made to *John Smith* of *Preston;* and there are two persons of that name in *Preston.* This fact is evinced, by testimony *dehors* the instrument. As this ambiguity is made to appear, by extrinsic proof; so it may be shown, by parol proof, who was intended as the grantee or devisee. 3 *Stark. Ev.* 1021. 1025. and the numerous cases there cited. In *Jones* v. *Newman,* 1 *Bla. Rep.* 60. there was a devise to *John Cluer of Calcot.* There were two *John Cluers,* father and son. It was insisted, that as the father died before the testator, the devise was lapsed; and so the judge ruled at *Nisi Prius;* but the whole court granted a new trial, because the defendant, who claimed under the will, was not permitted, at the trial, to prove, that the testator intended by *John Cluer of Calcot,* the son, and not the father. This case compares well with that now under consideration. Here is a deed to *Elijah Wheedon.* The plaintiff insists, that *Elijah Wheedon,* the son, or *Elijah Wheedon* jun., was intended. Why may he not show that fact?

In *Powell* v. *Biddle,* 2 *Dall.* 70. the supreme court of *Pennsylvania* declared, that a devise to *Samuel Powell,* (son of *Samuel Powell,* carpenter) might be shown to intend *William Powell,* a son of the same *Samuel Powell,* who had another son named *Samuel Powell.* By parol testimony, it was proved, that the testator was much attached to *William;* called him, by mistake or a nick-name, *Samuel;* and that he did not know *Samuel.* I feel no necessity, however, to extend the doctrine so far in this case.

It is material, that *Elijah Wheedon* jun., as appears on the motion, negotiated with the grantor for the land; and that the deed was intended for and delivered to him. It results, then, that as the deed was never delivered to *Elijah Wheedon,* the father, he could take nothing by it; and hence it is wholly inoperative, unless *Elijah Wheedon* jun. can show himself entitled under it. The maxim, then, applies, that a deed shall be so construed *ut res magis valeat quam pereat.*

The authorities cited in opposition to this doctrine, are found in 2 *Root* 437. and *Hobart* 330.

In *De Kentland* v. *Somers,* in *Root,* it was decided, that where to an action of debt on judgment, a plea was put in,

that there was no such record, the omission of the addition of *Windham*, "junior," in the description of one of the judgment debtors, was fatal. Great strictness is required in the description of records, in all indictments and other criminal proceedings, and slight variances are fatal errors. *Rex* v. *Shakspeare*, 10 *East*, 83. 85. *Gordon* v. *Austin* & al. 4 *Term Rep.* 611. *Cole* v. *Hindson* & al. 6 *Term Rep.* 234. But these rigid rules are not applied, in other cases, to the description of names. See *Litchfield* v. *Farmington*, 7 *Conn. Rep.* 100. In *Beaumont* v. *Fell*, 2 *P. Wms.* 141. it was decided, that *Gertrude Yardley* was the person intended in a will describing her by the name of *Catharine Earnley.* So in *Powell* v. *Biddle*, above cited, it was proved, by parol evidence, that a legacy given to *Samuel Powell*, was intended for *William Powell*, though there were persons of the same family of both names. Now, a record of a judgment in favour of *Gertrude Yardley*, could never be shown to be in favour of *Catharine Earnley.*

The opinion of the court in *DeKentland* v. *Somers*, is given very briefly. No reasons are assigned, nor authorities cited. It could not, therefore, controul this case, if it were identical; but there is a manifest difference.

It is somewhat difficult to understand the case of *Wilson* v. *Stubbs, Hob.* 330. The question arose upon a description in a writ of one *Ralph Stubbs.* It seems, that there were father and son of that name; and the court say, (and for this purpose the case was read) " the defendant being named *Ralph Stubbs*, without any addition, shall never be accounted the younger, but always the elder of the two of that name." (How can this be reconciled with the cases in *Dallas, Blackstone* and *Peere Williams*, as cited above!) A more satisfactory report of this case is found in *Cro. Jac.* 624. by the name of *Stubbs* v. *Cook.* " In a replevin by *Cook* against *Ralph Stubbs*, for beasts taken, he made cognizance as bailiff to the Earl of *Northumberland* for an amerciament in a leet; whereupon they were at issue, which was found for the plaintiff, and damages and costs assessed, and judgment given accordingly. He surmised, that the suit was against *Ralph Stubbs* senior, and, execution being sued, the sheriff had endeavoured to levy the damages and costs upon the goods of *Ralph Stubbs* junior; wherefore he sued this writ, [called a writ of *identitate nominis*,] to be discharged; and the writ was allowed, although it was after verdict, judgment and execution awarded." Now, why was this writ

*Windham,*
July, 1830.

Coit
*v.*
Starkweather.

allowed? If it had been found, that *Stubbs* jun. was the man against whom the judgment was rendered, would he have been discharged? The trial of the cause supposes, that it might have appeared, that *Ralph Stubbs* jun. was in truth the debtor, and that too from the identity of the names. It would be an odd enquiry, in a court of justice, whether *John Stiles,* a defendant, should be relieved from a judgment against *Thomas Nokes.* The suggestion of the court, therefore, in the case in *Hobart,* that *Ralph Stubbs* without addition, should never be accounted the younger, but always the elder of that name, is done away, *by the trial of the cause.* The case proves, that when there are father and son of the same name, an enquiry may be instituted, by which it is to be ascertained which is intended, though neither *senior* nor *junior* be added. In this view, this authority is in accordance with the opinion now expressed. Had the deed been made to *Elijah Wheedon,* and the bargain been made with the father, and the deed *delivered* to him, it might have presented a different question.

Let a new trial be granted.

The other Judges were of the same opinion.

New trial to be granted.