## ROSE SKAPNIT
*vs.*
## JOHN H. SKAPNIT

Superior Court        New Haven County        File No. 56128

MEMORANDUM FILED JUNE 29, 1939.

*Fitzgerald, Foote & Fitzgerald,* of New Haven, for the Plaintiff.

*Alexander Winnick,* of New Haven, for the Defendant.

QUINLAN, J. It is deplorable that a case of this kind should have to be decided by a court. It is undisputed that the plaintiff on March 23, 1937, was in bad health and at the New Haven Hospital. At the time her husband was living.

Her son with his family, of wife and six children, were residing in Pennsylvania where the defendant son was operating a leased farm. The son was sent for and came to Connecticut, where the plaintiff and her husband were residing at Dunbar Hill, Hamden, on a twelve acre plot of land which they farmed in a small way, raising chickens and fruit.

There is no question either that the defendant, his father and a real estate man named Kennedy went to the hospital in connection with a deed. Apart from the foregoing facts, the parties are in discord, both as to facts and the legal effect of what the hospital episode produced.

So far as appears Mr. Kennedy was a disinterested person desirous of accomplishing from a layman's standpoint the wishes of the parties. The mother had had some previous difficulty with her son and was consequently insistent that she should be protected in her use of the property. A quitclaim deed had been prepared for the conveyance of the property at Dunbar Hill to the son and the parties constituted Mr. Kennedy with authority to add a life use to the deed before recording it, and because of the prudence that was exercised by the mother in requiring provision for herself I find she fully understood what she was doing. I also find that by a collateral independent undertaking the son and his family were to move onto and occupy the premises rent free and support the mother. This was not inconsistent with the life use reserved by her.

The deed was recorded by Mr. Kennedy and returned to the son and whatever his reaction may have been to the inclusion of the life use, he took no affirmative court steps to seek the relief he is now asking in the way of reformation until two years later. Any improvements he made on the property were with knowledge of the claim of the life estate.

The plaintiff now claims an accounting for a horse and cow that were sold by the son, for the destruction of certain fruit vines and trees and for the value of his use and occupation, the defendant claims for the improvements made by him, and other equitable relief is claimed by the parties. The plaintiff has not paid the taxes on the property nor the interest on the mortgage which would be obligations of the life tenant and the defendant has not contributed to the support of his mother, largely because of his claimed surprise at the inclusion of the life estate in the deed, and his resulting inability to refinance the property so as to aid his mother since

his resources are insufficient to take care of his own family. I also find that there was no intention on the part of the plaintiff that the defendant should pay rent and therefore rental value is recoverable only from the time when the holding of the occupant became adverse to the owner (*Schleicher vs. Schleicher,* 120 Conn. 528), which was at the time of bringing suit in December, 1938. Inasmuch as the defendant has obligated himself for certain expenses incident to his mother's commitment and the funeral expenses of his father which will be a charge upon the land, ultimately, I make no allowance for the cow and horse sold and the vines and trees destroyed if indeed the latter were supported by sufficient proof.

The insertion of the life estate without a new attestation and reacknowledgment, even with the consent of the parties, makes the deed inoperative as to the life estate (*Coit vs. Starkweather,* 3 Conn. 289), but does not affect the validity of the deed as originally executed (Anno., 67 A.L.R., 364, 372).

This brings about a situation which the facts do not warrant, nor indeed support. The statute of frauds does not extend to trusts arising by operation of law, and under the case of *Verzier vs. Convard,* 75 Conn. 1, imposition and circumvention are elements that make for a constructive trust. What the intent of the defendant was with reference to his mother's use of the property can only be inferred from his conduct, taken in connection with the testimony of Mr. Kennedy, and his promise to his mother was the "medium of a deception" as distinguished from "an honest promise to perform" which can never support an action of fraud. *Sallies vs. Johnson,* 85 Conn. 77. I find then that it is inequitable for the defendant to take the conveyance discharged of the life estate which would make for an unjust enrichment, and that there was a constructive trust to the extent of a life use. *Reynolds vs. Reynolds,* 121 Conn. 153, 159.

While it is true that the plaintiff has not paid taxes and interest, the defendant was occupying the property so she could obtain no rent from it. In such a situation there is a limitation on the duty to keep current charges paid. Restatement, Property §130.

So far as the improvements made by the defendant are concerned they were made with notice of the claimed lien of the plaintiff and moreover were of a nature which the plaintiff as the life tenant had no duty to make but were for the personal

benefit and advantage of the defendant. Under these circumstances there was no liability for reimbursement to the defendant for such expenditures. Restatement, Property §139.

Judgment for the plaintiff for five months rent at $35 a month or $175 and for an injunction ordering the defendant to vacate the premises on or before August 1, 1939, and the defendant validating the conveyance as originally drawn but charged with the trust of a life estate as above indicated without costs to either party.