## CARVILLE v. STOUT, et al.

1. A defendant in execution, though he be a certificated bankrupt, is not a competent witness upon a trial of right of property.

2. When the last of a series of depositions is read by the party taking it, he thereby makes the previous depositions evidence, and they may be referred to by either party, for the purpose of sustaining, or discrediting the witness.

3. When the court has permitted improper testimony to go to to the jury, it is not error to permit it afterwards to be withdrawn.

4. Property purchased with the proceeds of a fraudulent assignment, is subject to be levied on by execution, in the same manner as the assigned property would have been.

Error to the Circuit Court of Dallas.

TRIAL of the right of property, in which the plaintiffs in error were claimants.

From a bill of exceptions found in the record, it appears that the plaintiffs offered in evidence the executions on which they made their levy, showing that on the 6th October, 1842, they were levied on 175 pair russet brogans, 1800 sides of leather, 25 sides russet upper leather, three mules, two horses, and one road wagon. They also introduced the deputy sheriff, who proved the levy, and that he found the property

of George G. Carville and George W. Carville, at the tan yard in Dallas county—that both the Carvilles were engaged in the direction and management of the business. That the property was claimed, and the affidavit made by George G. Carville, for the firm of W. Jones & Co., of which he professed to be a member. The witness stated, that he did not count or see the 1800 sides of leather, they being in the vats, but took the estimate of Carville as to the quantity. That the firm of Bissell & Carville, was not at the time of the levy, carrying on any tanning, or other business—that they had long before broken up, and discontinued their business at their tan yard, and at their store in Carlowville.

The claimant introduced a witness to a deed of assignment made by Bissell & Carville, to one Peake, conveying their property in trust, for the payment of certain debts, and proved its due execution. That Bissell had been for some time anxious to make the assignment, but that George W. Carville, had for some time opposed it, but had finally yielded, and joined in the assignment. It was also proved, that Bissell & Carville, had frequent misunderstandings, as to a debt of $3,780, secured by the deed of assignment; the former insisting that it was not a partnership debt, the latter that it was.

The claimants also introduced Peake, the trustee, who stated, that in August, 1841, he sold the stock on hand at the tan yard, leather, shoes, &c. to Wm. Jones & Co. composed of Jones, G. W. and G. G. Carville, at the price of $5,371 28, which was a full price, and was paid for in part by the preferred debt of $3,780, estimated at|$3,000; the residue being abandoned by G. G. Carville, to whom it was due, and the purchase money paid to the creditors, principally by G. W. Carville, who acted as his agent.

It was further shown, that G. W. Carville, as the agent of Wm. Jones & Co., received the property at the tan yard, in September, 1841, and managed it for the concern, and it was in proof, that by the 9th of January, 1842, all the stock on hand was nearly or quite disposed of.

The claimant having shown that G. W. Carville was a certificated bankrupt, offered to read his deposition to the jury, which, on motion of the plaintiff's counsel, the court reject-

ed, because he was one of the defendants in execution, and the claimant excepted.

Subsequent to this decision of the court, by the agreement of the parties, the competency of both Bissell and Carville, as witnesses, was waived—the former being examined by the plaintiff, and the excluded deposition of the latter read, by the claimant. The deposition of the latter was read to sustain the assignment, and among other things proved, that the levy was made on articles which never belonged to Bissell & Carville. It appeared that the claimant had taken Carville's testimony, three several times, but read to the jury only the deposition last taken. The plaintiff insisted that all three should be read by the claimant, but the claimant contended, that if the plaintiff desired the others read, he could do so by making Carville his witness. The court ruled, that the claimant could not be required to read the two depositions first taken, nor the plaintiffs be compelled to make Carville their witness, but as the depositions had been brought into court, and were regularly taken, either party might refer to them; the claimant, to show their consistency with the one last taken, and the plaintiff to show their inconsistency with it; to which the claimants excepted, and the plaintiffs did refer to, and comment on the two first depositions.

Bissell was introduced as a witness by the plaintiffs, for the purpose of impeaching the assignment, and among other things deposed, that one Long, of the firm of Pettibone & Long, creditors of Bissell & Carville, were provided for in the deed, being at Carlowville shortly before the assignment was made, and during a temporary absence of G. W. Carville, examined their books, to ascertain the state of their accounts, and reduced to writing his instructions, and advice to said firm, in reference to the future conduct of said business; which paper so written by him, the plaintiffs offered in evidence. It appears to have been addressed to Bissell, and contains the writer's advice to the firm, and his reasons why they should make an assignment, as well as the mode in which it should be done.

It was proved that Pettibone & Long had consented to the assignment, and that this paper contained the only consent which they had ever given. The counsel for the claimants

objected to the plaintiff reading the whole of the paper, to which the plaintiffs' counsel assented. The claimant then objected to the reading of any portion of the paper, except particular parts thereof, which were pointed out, and they were read to the jury; and he then insisted that as part had been read, the whole should be read. The plaintiffs then offered the entire paper in evidence to the jury, to which the claimant's ecobjted, but the court permitted it to be read in evidence. The claimants then proposed to exclude from the jury certain parts of the instrument, which were pointed out, which motion the court overruled, and the claimant excepted.

The plaintiffs then moved for leave to withdraw from the jury all of said instrument except the portions first read, to which the claimant objected upon the ground that this would be to mutillate the instrument, and that if any part of it went to the jury, the whole should go except the parts objected to by the claimant; but the court overruled the objection, and permitted the portions first read to go to the jury, and excluded all the rest—to which the plaintiff excepted. The judge who tried the cause, certifies upon this part of the bill of exceptions, that this advice of Long was not admitted as evidence proper, but merely as a reason or inducement, for making the assignment, it being the advice of a large creditor of the firm.

The claimant requested the court to instruct the jury, that if the articles purchased by claimants of the assignee, were disposed of, or consumed before the levy, and the levy was made on other articles subsequently acquired by the claimants, although those levied on may have been paid for in whole or in part, out of the proceeds of those received of the assignee, and even if the latter would have been subject, if levied on, the former were not subject to the levy of the plaintiff; which charge the court gave, if the sale was fair, or the property *bona fide* their's. But if the sale was fraudulent and fictitious, and the property, at the time it was levied on, was either G. W. Carville's or Bissell's, the property was liable to their debts.

They further moved the court to charge, that even if the plaintiffs in execution, as creditors of Bissell & Carville, had

an equitable claim for further satisfaction of the debt, out of the funds or means with which the claimants purchased the property levied on, that circumstance did not render the properly subject to execution at law; which instruction the court refused to give as asked, but instructed the jury, that if the plaintiff had only an equitable claim to satisfaction out of the funds, or means with which the tan yard was purchased, the property would not be liable, but if the property sold, had it remained Bissell & Carville's, would have been liable, and if this property was fraudulently sold or conveyed, it would still be liable.

The matters presented by the bill of exceptions are now assigned as error.

R. SAFFOLD and G. W. GAYLE, for plaintiffs in error.

1. The court erred in rejecting the evidence of G. W. Carville, one of the defendants in execution—he having taken the benefit of the bankrupt law. [Act of 1845; Murray & Murray v. Marsh & Marsh, 2 Hayw. 290.]

2. The court erred in permitting the first and second depositions of G. W. C. (a third having been taken,) to be read by plaintiffs in execution.

3. The court erred in admitting the advice of Long, (a third person,) given to Bissell & Carville, to go to the jury, or any part thereof.

4. The court erred in deciding that the equitable interest of B. & C. (if any existed,) in goods acquired by claimants subsequent to the assignment, could be sold under execution. [Perkins and Elliott v. Mayfield, 5 Porter, 182; P. & M. B. v. Willis & Co. 5 Ala. 770; Williams, et al. v. Jones, 2 Ala. 314.]

HUNTER, contra.

1. Was there error in regard to George W. Carville's testimony—either in rejecting it at first, or in permitting the former depositions to be confronted with the one read by claimants?

He was clearly incompetent under the late act; his bankruptcy did not help the matter; it is said that it wholly extinguished his interest; the act does not proceed on the

ground of interest, for no legal interest existed before, but on policy alone—and, in fact, the bankruptcy rather tended to make him interested for claimant.     Under this head, see Acts of 1845, p. 136; Yarborough v. Moss, 9 Ala. Rep. 382. Besides, they did have the benefit of his testimony afterwards by consent.

And as to confronting the former depositions with the one read, that was clearly proper on principle, and is sanctioned by, and was done under the decision of this court in the case of Hester, Wilson, White & Co. v. Lumpkin, 4 Ala. R. 509.

Besides, it will be seen that the agreement was, that the *depositions* (in the plural) of Carville may go to the jury.

2. Did the court err in regard to Pettibone & Long's instructions in regard to the assignment?

As to this, claimants, by their course, in first objecting to only part, and when the part unobjected to had gone to the jury, then objecting unless the whole went, have so placed themselves that they can make no objection—the whole difficulty was of their own creation, and by the strange course they forced upon the other party the necessity of pursuing the course they did pursue.

But the part introduced *was* admissible for plaintiffs below—they had a right to it as an important act or declaration of Pettibone *&* Long, *large creditors provided for in the deed attacked*, at or about the time it was executed—it was a part of the *res gesta*, or transactions of which the deed was the immediate result.   [1 Greenl. 66, 108, 180, and notes; and see Graham v. Lockhart, 8 Ala. R. 9.]

3. It was good to contradict G. W. Carville, who stated that they did assent, or to show the character of that assent. And independent of all these considerations, the declarations of Pettibone & Long were good evidence in the cause—that is to say, all declarations previous to the sale to these claimants, by Peake, under the deed of assignment—because they were beneficiaries, or parties in interest, to that deed— Peake the assignor, was then mere trustee, without any interest.

4. The charges asked and given about equitable interests.
101

This is still more difficult to understand—especially when we look to the case for something to apply it to. However there can-be no error here, for so far as it is intelligible, the charges asked are *abstract*, and the charges given are correct *in the abstract*.

ORMOND, J.—The act of 1845, (Pamphlet Acts, 136,) declares, that the mortgagor, or defendant in execution, in all cases of the trial of the right of property, shall be incompetent to give testimony between the parties. The policy of this act, was to render these persons incompetent to testify, independent of the question of interest, for as the law stood previous to this enactment, persons so circumstanced could not testify, unless they were disinterested, or at least unless their interest was equally balanced, and their exclusion by this statute, is founded on public policy, irrespective altogether of the question of interest. It follows necessarily, that the bankruptcy of a witness did not render him competent, as that could only affect his interest, and therefore left him in the same condition he was in before he took the benefit of the act. The act declares him an incompetent witness, and no act that he can do, can restore his competency. Such have been the previous decisions of this court upon the law. [Yarborough v. Moss, 9 Ala. 382, and Brumby v. Langdon & Co. at the present term.]

2. But this point is rendered wholly unimportant, by the agreement afterwards entered into by the parties to read the deposition of Carville, and examine Bissell as a witness. Nor did the court err in permitting the plaintiffs to refer to, and read the previous depositions of Carville, without imposing on them the obligation of making him their own witness: when a party takes the deposition of the same witness more than once, he necessarily opens the testimony, to any objection arising from a discrepancy between the statements of the witness in the first and subsequent depositions. Thus, in Hester and others v. Lumpkin, 4 Ala. 512, speaking of such a case, it is said, "the subsequent deposition could also be confronted with the first, and any material departure therefrom, or contradiction therein, would impeach the credit of the witness." But how could this be, if the other party

could only refer to the previous depositions, upon the condition of making the deponent his witness. By so doing he would confer credibility upon him, and would thus defeat the very object in view. We are clear in the opinion, that when the last of a series of depositions is read by the party taking it, he thereby makes the previous depositions evidence, and they may be referred to by either party for the purpose of sustaining or discrediting the witness.

3. We think it a matter of great doubt, whether the written statement of Long was evidence for any purpose, except to show the consent of his firm to the assignment; and it is also very doubtful, from the bill of exceptions, taken in connection with the certificate of the presiding judge, whether it was admitted for any other purpose. But the competency of the testimony does not appear to be raised by the bill of exceptions. As we understand it, it narrates the transaction in the court below, thus—the plaintiff offered the entire instrument in evidence. The claimant objected to this, and pointed out certain portions of the statement as proper to be read, to which the plaintiffs' counsel assented, and the parts of the writing so indicated were read to the jury without exception. The claimant then insisted, that if part was read, the whole should go to the jury, to which the plaintiffs' counsel also assented, but the claimant then insisted on excluding certain portions which he pointed out; but the court decided that the whole should be read, and it was read to the jury. After this, on motion of the plaintiffs, the court excluded all the statement from the jury, except the portions first read with the assent of the claimants' counsel, and to this exclusion of the whole of the residue, the claimant excepted. By this last act, the court placed the parties upon the same ground they occupied at first, when by consent, a part, instead of the whole was read as evidence. There can be no doubt of the power of the court to permit a party to withdraw from the jury, testimony, which had been inadvertently offered; nor is the opposite party at all prejudiced thereby. The object of the claimants' counsel appears to have been, to have certain portions of the instrument read, excluding others, but this was resisted on the other side, and he could not claim it as a right. Upon the whole, we are unable to perceive

that any error was committed of which the claimant could complain.

4. The charges moved for, and refused by the court, are based upon the hypothesis, that conceding the assigned property could have been levied on and sold to satisfy the plaintiffs' judgment, because the assignment was fraudulent, the property levied on was not subject, although it had been purchased with the proceeds arising from the sales of the property so fraudulently assigned. At the present term of this court, we have held the converse of this proposition to be law, in the case of Abney v. Kingsland, et al. That was where a slave had been fraudulently sold, for the purpose of defeating creditors, and afterwards exchanged by the fraudulent vendee for another, and it was determined that the slave so obtained in exchange, was subject to be levied on by the creditors of the fraudulent grantor. The principle of that case is identical with the question now under consideration, as is also the previous case of Marriott v. Hardesty & Givens, 8 Ala. 710.

From these considerations it is apparent there is no error in the judgment of the circuit court, and it is therefore affirmed.