DOE ex dem. HUGHES vs. WILKINSON.

[EJECTMENT BY HEIRS-AT-LAW OF WIFE AGAINST SUB-PURCHASER FROM HUSBAND AND WIFE.]

1. *Admissibility of parol evidence explanatory of certificate of acknowledgment of deed.* Where the deed of husband and wife, conveying lands belonging to the wife, and a relinquishment by the wife of her dower in the same lands, are written on the same sheet of paper ; and the certificate of a justice of the peace, to the effect that the wife, on private examination apart from her husband, " acknowledged that she signed, sealed and delivered *the foregoing instrument,* as her voluntary act and deed," is appended at the foot of the relinquishment,—a party claiming under the deed cannot be allowed to

prove, by the parol testimony of the justice by whom the acknowledgment was taken, that the acknowledgment was intended by the wife and himself to apply to the deed, and not to the relinquishment; but he may thus prove that, when the acknowledgment was taken, the relinquishment of dower was not written on the paper. (A. J. WALKER, C. J., *dissenting* from the former proposition.)

2. *Impeaching witness.*—The rule which requires a party, seeking to impeach a witness by proof of prior contradictory statements, to lay a predicate for so doing by inquiring of the witness whether or not he made such statements, is applicable to a case in which the contradictory statements were made in the written deposition of the witness taken in a prior case between the same parties.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN E. MOORE.

THIS action was brought by the appellants, against Beverly N. Wilkinson, to recover a certain parcel of land in the city of Montgomery, which the plaintiffs claimed as the heirs-at-law of Mrs. Jane A. E. McBryde, deceased, and to which the defendant derived title under a deed from one Homer Blackman, who claimed under a deed from Mrs. McBryde and her husband. It is the same case which was before this court at its June term, 1852, and which may be found reported in 21 Ala. 296; the judgment from which this appeal is prosecuted having been rendered at the November term, 1857, after the dismissal of the bill in chancery which was filed by the defendant to enjoin the further prosecution of the action.—See McBryde's Heirs v. Wilkinson, 29 Ala. 662.

On the trial, as the bill of exceptions shows, after the plaintiffs had proved title in their ancestor, her death, and that they were her heirs-at-law, "the defendant proposed to read to the jury the following instruments, with the certificates thereto attached, all on the same sheet of paper, having proved the signatures thereto, as follows." The instruments here set out are—1st, a deed from Edward A. McBryde and Jane A. E., his wife, dated the 16th May, 1839, conveying the premises in controversy to Homer Blackman; 2d, the certificate of Robert Parker, a justice of the peace, to the effect that, "on the 16th and 17th days of May, 1839, the above named Edward A. McBryde and Jane Ann Elizabeth McBryde, his wife,

both personally appeared" before him, "and acknowledged the above instrument to be their own free act and deed"; 3d, a relinquishment by Mrs. McBryde of "all right, title, interest and claim to dower" in the premises conveyed by the deed, dated the 17th May, 1839 ; and, 4th, a certificate by Robert Parker, as justice of the peace, to the effect that, on said 17th May, 1839, he had examined Mrs. McBryde "privately and apart from her said husband, and that on such private examination she acknowledged that she signed, sealed and delivered the foregoing instrument, as her voluntary act and deed, freely, without any threats, fear, or compulsion of her said husband." In offering these instruments, the defendant " announced at the time that he expected to prove, by parol evidence, that the certificate next to the relinquishment of dower was, by mistake of the officer who took it, made to apply to the relinquishment of dower, when in fact it was intended by Mrs. McBryde and the officer to apply to the deed signed by Edward A. McBryde and his wife jointly. To the admission of the same, as proposed to be read, in connection with the testimony, the plaintiffs objected; but their objection was overruled, the *instrument* was read to the jury, and they excepted. The plaintiffs then objected to the reading of the deed from said McBryde and wife jointly, on the proof made, and the proof proposed to be made in connection therewith, as above stated ; but their objection was overruled, the *instruments* were read to the jury, and they excepted." The defendant then read in evidence, after proof of its execution, a quit-claim deed for the premises, from said Homer Blackman to himself, dated the 27th January, 1847.

The defendant afterwards offered in evidence the deposition of Robert Parker, the justice of the peace by whom the certificates above referred to were made; which was taken on interrogatories, and to which were appended as exhibits the said deeds and certificates, marked " A," " B," " C," and " D," in the order in which they are above described. The material portions of the testimony of this witness are in the following words: " (1.) Witness says, that he has looked on the deed marked ' exhibit A,'

and that he was, at the time of the date of said deed, a justice of the peace and notary public for Montgomery county. (2.) He says, that he has seen this deed before ; that it was first shown to him, either by Nathan Harris, now deceased, or by Homer Blackman, (he does not remember which;) that he presented said deed to Edward A. McBryde, to get him to acknowledge its execution, on the 16th May, 1839, and to Mrs. Jane A. E. McBryde, for her signature, (she not having signed,) on the 17th May, 1839, when she signed the same in his presence ; that said Edward A. McBryde acknowledged before him that he signed, sealed and delivered the said deed, on the 16th May, 1839,—a certificate of which he gave, at the bottom of said deed, marked ' B'; and that said deed was presented for the purpose above stated, at the request of either Nathan Harris or Homer Blackman, but he does not recollect which. He further says, that Mrs. Jane A. E. McBryde being a married woman when the deed was presented to him by said Harris or Blackman, he was requested, not only to get her signature to the deed, but also to examine her, separate and apart from her husband, touching her willingness to execute said deed. (3.) Witness has looked upon the certificate marked 'B,' and says, that said certificate is signed by himself; that both said Edward A. McBryde and Mrs. Jane A. E. McBryde acknowledged the execution of said deed before him, as said certificate purports on its face ; and that they did not appear before him at the same time and place, but E. A. McBryde appeared on the 16th, and Mrs. McBryde on the 17th May, as above set forth. (4.) He says, that he has looked on the deed marked ' C' ; that there was a blank on the back of the deed marked ' A,' for the renunciation of dower; that this blank had not been filled up when handed to witness by said Harris or Blackman, nor was he requested to fill up said blank, or to take any renunciation of dower from Mrs. McBryde ; that after the deed marked ' A' had been executed by Mrs. McBryde, he advised her that he had better fill up said blank, and for her to relinquish her dower; that she replied to this, that Homer Blackman had been a good friend to her, and

had bought and paid for the land, and she wanted him to have a good title; that witness then told her, that her signing the dower would make the title stronger, and she then agreed to sign the deed marked ' C'; and that he then filled up the deed, she signed it, and he subscribed his name thereto as a witness. (5.) He has looked upon the certificate marked ' D', and says, that he did examine Mrs. McBryde, separate and apart from her husband, as said certificate imports; that he examined her as to the deed marked ' A.'; that she acknowledged before him, on such private examination, that she signed, sealed, and delivered the said deed, as her voluntary act and deed, freely, without any fear, threats, or compulsion of her said husband; that she then said, also, that the property was her own, and that she desired to convey it to Blackman; *and that under this examination witness made the certificate marked ' D.'* (6.) He says, that he has been examined on this subject before, and that if anything is set down in that examination as his evidence, which goes to show that the certificate marked ' D' relates to the deed marked ' C,' and not to the deed marked ' A,' then he must have misunderstood the interrogatory, or he was misunderstood in his answer; for he never intended to give any such testimony, as he always knew that the said certificate related to the deed marked ' A.' (7.) He says, *that he is not able to answer this interrogatory positively; but, according to the best of his recollection and belief, the certificate marked ' D' was completed, before the deed marked ' C' was executed; for the execution of the deed marked ' C' was an after-thought of witness, supposing it might make the title stronger, as Mrs. McBryde said she wanted to make a good title."* The plaintiffs objected to this entire deposition, and also to each of the italicized portions separately, " as illegal and incompetent evidence;" but the court overruled their several objections, and they excepted.

For the purpose of contradicting said Parker, and impeaching his testimony above set out, the plaintiffs proposed to read in evidence his deposition as a witness in the chancery suit above mentioned. The court excluded

this evidence, on the defendant's motion, and the plaintiffs excepted.

These rulings of the court, with others, in consequence of which the plaintiffs were compelled to take a nonsuit, are now assigned as error.

ELMORE & YANCEY, for the appellants.—The settled rule is, "that the intent of a party is to be ascertained from the meaning of the words in the instrument, and from those words alone, with the aid of such extrinsic evidence as the law permits to be used, in order to enable a court to discover the meaning of the terms in the instrument, and to apply them to the particular facts of the case."—2 Phil. Ev. (ed. 1849,) 276, (ed. 1859,) 633. This rule is divided into two branches, which relate to patent and latent ambiguities; and the former branch of the rule, relative to patent ambiguities, is again sub-divided into two branches—viz., that class of patent ambiguities which are susceptible of explanation, and that which relates to patent ambiguities not susceptible of explanation. In reference to the former class of patent ambiguities, the rule is, that parol evidence is admissible, where words have acquired a peculiar meaning in any art or trade, or by local usage, or among particular classes, or are in a foreign language; or, perhaps, where the party has been in the habit of using some particular term to express a particular object or subject, and has used that term in the instrument to be construed. The cases of Fagin v. Connolly, (25 Missouri, 94,) Bradley v. Steam Packet Co., (13 Peters, 89,) and Brown & Co. v. McGran, (14 Peters, 493,) cited by the appellee's counsel, belong to this class. The second class of patent ambiguities includes all cases that cannot be brought within the first class, and embraces those cases in which the words used are of well-known meaning, and are appled to matters in the instrument, but the context does not show how they were intended to be used; cases in which, from the obscurity of the writing, inaccuracy of expression, or any failure therein to express the meaning, the court cannot arrive at the intention of the parties. Under this branch of the rule, parol evidence

of the intention of the parties, as shown by their decla-
rations contemporaneous with the execution of the instru-
ment, or before or after that time, is excluded. As appli-
cable to wills, it excludes parol evidence of the actual
intention of the testator, for the purpose of controlling
or influencing the construction of the written words, or
introducing into the will an intention not apparent on its
face.—1 Jarman on Wills, m. pp. 358, 364; 2 Phil. Ev.
(ed. of 1849,) 310, 278, 286 ; 1 Greenl. Ev. § 300. Castleton
v. Turner, (cited in 1 Jarman on Wills, 357,) Doe v.
Westlake, (cited in 2 Phil. Ev. 334,) and Richardson v.
Watson, (4 Barn. & Adol. 787,) are cases which fall within
this branch of the rule. In reference to latent ambigui-
ties, which are susceptible of explanation, the rule applies
to those cases in which it is first made to appear, by parol
evidence, that there are two or more persons or things, or
two or more subjects, equally answering the description
in the instrument; or, as expressed by Phillipps, (Ev.
vol. 2, p. 277,) "for the purpose of applying the instru-
ment to the facts, and of determining what passes by it,
or who takes an interest in it, every material fact may be
introduced that will enable the court to identify the person
or thing mentioned in the instrument."

The case at bar does not fall within the rule applicable
to latent ambiguities. The parol evidence was offered and
admitted, not for the purpose of raising an ambiguity,
but to explain and remove the ambiguity which was sup-
posed to be apparent on the face of the deeds and certifi-
cates. But there was, in fact, no ambiguity on the face
of the instruments, whether construed separately or
together. The entire sheet of paper, as offered in evi-
dence, presented to the consideration of the court two
deeds and two certificates; the deed of McBryde and
wife, with a certificate thereto attached, being written on
the first half of the paper ; and the relinquishment of
dower, with another certificate thereunto attached, on the
second half. Construed separately, each certificate refers
to the deed immediately preceding it, and can refer to
no other deed. Construed together, the reference mus.
still be the same ; otherwise, we have two certificates ap-.

pended to one deed, and another deed without any certificate. Construed together, no ambiguity could arise, unless the words " the foregoing instrument," as used in the second certificate, referred indifferently to each of the deeds written on the same paper. But the relative words of the certificate properly refer to the instrument immediately preceding them; and such was the decision of this court when the case was formerly before it. If the relative words refer with equal legal certainty to both deeds, then the record presents a case of patent ambiguity, in which parol evidence of the intention of the parties is inadmissible.

GOLDTHWAITE, RICE & SEMPLE, *contra.*—1. It is the province of the court to construe written documents, but the application of their provisions to external objects is the peculiar province of the jury.—Richardson v. City of Boston, 19 How. (U. S.) R. 263 ; McLendon v. Godfrey, 3 Ala. 181 ; Grant v. Maddox, 15 Mees. & W. 737, note ; Brown & Co. v. McGran, 14 Peters, 493 ; Fish v. Hubbard, 21 Wendell, 652 ; Bradley v. Steam Packet Co., 13 Peters, 89, 102 ; Fagin v. Connolly, 25 Missouri, 94 ; Bishop of Meath v. Lord Belfield, 1 Wilson, 215.

2. Ambiguities apparent on the face of an instrument are distinguished from such mistakes or inconsistencies as cannot appear from an inspection of it. It is firmly settled, as to the latter, that parol evidence may be introduced, " explanatory of the intrinsic circumstances, and reconcilable with the written instrument."—Hamner v. Cobb, 2 Stew. & P. 383 ; Meredith v. Richardson, 10 Ala. 828 ; Hogan v. Reynolds, 8 Ala. 59 ; Lunsford v. Richardson, 5 Ala. 618 ; Clammer v. State, 9 Gill, 279 ; Wood v. White, 32 Maine, 340 ; Taney v. Batchell, 9 Gill, 211, and authorities cited in first paragraph.

3. The opinion pronounced in this cause by this court, at its June term, 1852, (21 Ala. 296,) is based entirely upon the face of the papers, and the mere inferences drawn from them, in the absence of all explanatory evidence. Conceding that opinion to be correct, upon the case as then presented, it is not the law of the very different case now

presented; explanatory evidence of a controlling character being now introduced, which renders the former opinion inapplicable to the case.—Walker v. Forbes, 31 Ala. 9; McBryde's Heirs v. Wilkinson, 29 Ala. 662. The former opinion amounts, at most, only to an announcement of the *prima-facie* intendments arising from the mere face of the papers, in the absence of all explanatory evidence; but it does not decide, or intimate, that the words "the foregoing instrument," occurring in the certificate of the justice, were not explainable by parol evidence; nor that those words might not be shown, by parol evidence, to apply and refer to the deed of McBryde and wife. Whether or not those words could be thus explained, was a question neither presented nor considered at that time.

4. If the certificate of the justice had used the words "the next foregoing instrument," or "the instrument immediately preceding this certificate," parol evidence would not have been admissible, to show that those words did not apply or refer to the relinquishment of dower; because, in that case, the parol evidence would directly contradict the express words of the certificate, and could not be reconciled with those words. But the words actually used in the certificate, are essentially different from those supposed, and are reconcilable with what the parol evidence tends to prove. They refer to some instrument which precedes the certificate, on the same piece of paper, but do not, *per se*, conclusively fix their own reference or application; they refer to an external object, but do not definitely point to what object; and as two instruments are found before them, on the same piece of paper, to either one of which they may be applied without producing any repugnancy or irreconcilable conflict, the parol evidence was admissible to fix their application.

R. W. WALKER, J.—The appellee (who was the defendant in the court below) offered in evidence a paper consisting of a single sheet, upon which are found—1st, a deed, dated 16th May, 1839, executed by McBryde and wife, conveying the land in controversy to Homer Blackman; 2d, a certificate by a justice of the peace, of the

acknowledgment, on the 16th and 17th May, 1839, by McBryde and wife, of "the above instrument," as "their own free act and deed," which certificate does not show a private examination of the *feme covert ;* 3d, a relinquishment of dower by Mrs. McBryde, dated 17th May, 1839, written upon the back of the above mentioned deed, and relinquishing to "Homer Blackman, the grantee within named," her dower "in the lands and premises within described; and 4th, a certificate by the same justice of the peace, written beneath the relinquishment, and dated 17th May, 1839, to the effect that he had on that day examined Mrs. McBryde, privately and apart from her husband, and that on such private examination she "acknowledged that she signed, sealed, and delivered the foregoing instrument, as her voluntary act and deed, freely, without any fear, threats, or compulsion of her husband."

The fee in the land was in Mrs. McBryde, and if the words "the foregoing instrument," as used in the last mentioned certificate, refer to the deed, and not to the relinquishment of dower, the estate of the wife in the land passed by the deed and certificate. But, if those words refer to the relinquishment of dower, and not to the deed, the estate of the wife in the land did not pass. Doe *ex dem.* Hughes v. Wilkinson, 21 Ala. 296; McBryde v. Wilkinson, 29 Ala. 662. The defendant insisted in the court below, that the certificate which follows the relinquishment was really applicable to the deed; and the court, in effect, permitted him to show by parol evidence, and as an independent fact, that the deed of McBryde and wife, and not the relinquishment of dower, was the instrument *intended* to be designated by the words, "the foregoing instrument," as used in that certificate. The admissibility of this evidence is the main question which we are to decide.

The general rule, in reference to the construction of written instruments, is, that the inquiry is restricted to the meaning of the terms used, and to the intent which the language of the instrument expresses. It is true that, for the purpose of enabling the court to arrive at the intention expressed in the writing, and to make a correct

application of the words of the instrument to the subject-matter thereof and the objects proposed to be described, all the surrounding facts and circumstances may be proved. In other words, the court may, by admitting in evidence the extrinsic circumstances under which the writing was made, place itself in the situation of the party who made it, and so judge of the meaning of the words, and of the correct application of the language to the things described. Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed ; and in its admission, the line which separates evidence which aids the *interpretation* of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view,—the duty of the court being to declare the meaning of what is written in the instrument, not of what was *intended* to be written.—2 Phill. Ev. (ed. of 1849,) 277, 281, 293–4; 4 Phill. Ev. 528, 529, 531, 551, 571, 495, 534 ; 1 Greenl. Ev. § § 277, 288; Rosborough v. Hemphill, 5 Rich. Eq. 105–6–7; Tucker v. Seaman's Aid Society, 7 Metc. 188, (205 ;) Wigram, 59, 138 ; 1 Spence's Eq. Jur. 555–6–7.

To the general rule which excludes any direct evidence of what the party intended, except such as may be furnished by the writing itself when construed in the light of the circumstances surrounding the writer when it was executed, the authorities have established two exceptions, the recognition of which has been forced upon the courts by the necessity of the case. The first of these is where the object is to rebut an equity, and prevails alone in courts of equity.—2 Taylor Ev. § § 854, 861, and cases cited. The second exception alluded to is where the instrument refers to some external object, and it is made to appear that there are two or more objects, to each of which the language employed is applicable with legal certainty. In such cases, extrinsic evidence is admissible, to show to which one of these several objects the party intended to refer.—4 Phill. Ev. (ed. of 1850,) 534, 536, 539, 540–1, 551; Wigram Extr. Ev. 14, (7th proposition,) 118,

115, 147–9, 169 ; 2 Phill. Ev. (ed. 1849,) 300, 303, 322, 327–8 ; 1 Greenl. Ev. §§ 288, 290 ; 2 Taylor Ev. §§ 854, 856–61, 867 ; Doe v. Hiscocks, 5 M. & W. 362, (367–8,) and note on p. 372 ; Doe *ex d.* Gord v. Needs, 2 M. & W. 129 ; Miller v. Travers, 8 Bing. 244 ; Osborne v. Wise, 7 C. & P. 761 ; Tucker v. Seaman's Aid Society, 7 Metc. 188, (205–6–7–8 ;) 1 Spence's Eq. Jur. 560–1. As where the testator gives the manor of Dale to his nephew, John Smith ; and in applying the will to the property, it appears that the testator had two manors of Dale, or two nephews named John Smith ; and no inference can be drawn from other parts of the will, or the circumstances and relations of the testator, to indicate which was meant : in such a case, parol evidence is admissible, to show which manor was intended to pass, and which nephew was intended to take. Doe v. Hiscocks, 5 M. & W. 368 ; Miller v. Travers, 8 Bing. 244 ; Tucker v. Seaman's Aid Society, 7 Metc. 206 ; and authorities *supra.* So, where the head of Swan Creek is called for in a deed, and two creeks are set up by the respective disputants, parol evidence is allowed, to show which is the creek intended. In like manner, where a tree is called for, and there are two trees answering the description ; or where a way is granted, and there are two ways to which the language is equally applicable, the courts will receive extrinsic evidence *of the intention itself*, in order to make certain the object which the parties actually had in view.—4 Phill. Ev. (ed. 1850,) 496, 539 ; Hammond v. Ridgely, 5 Har. & J. 215; Pritchard v. Hicks, 1 Paige, 270 ; Doe v. Morgan, 1 Cromp. & Mees. 235 ; Waterman v. Johnson, 13 Pick. 261; Coit v. Starkweather, 8 Conn. 289.

In this class of cases, the inquiry is, what did the party *intend* to express ; and any evidence which, upon general principles, is relevant and material to that inquiry, will be admitted. Declarations of the parties, made at the time of the execution of the instrument, or any other facts indicating an intention to refer to any one of the several objects, which appear to be equally within the words employed, are received, to settle the doubt as to which was the object actually intended.—Wigram Extr.

Ev. 118; 4 Phill. Ev. 540, 551; Doe v. Hiscocks, 5 M. &
W. 369; Doe v. Needs, 2 M. & W. 129; 2 Taylor Ev.
§ § 856–8.

The principle on which, in this class of cases, the courts
receive direct evidence of the intention of the party in
using particular words, is thus stated by Parke, B., in Doe
*d.* Good v. Needs, 2 M. & W. 129: " The characteristic
of all these cases is, that the words of the will *do* describe
the object or subject intended; and the evidence of the
declarations of the testator has not the effect of varying
the instrument in any way whatever: it only enables the
court to reject one of the subjects or objects, to which
the description of the will applies, and to determine
which of the two the devisor understood to be signified
by the description used in the will."—See, also, Wigram
Extr. Ev. 115; Tucker v. Seaman's Society, 7 Metc. 208;
Doe v. Hiscocks, 5 M. & W. 369.

Such cases meet exactly Lord Bacon's definition of a
latent ambiguity, which, he says, " is that which seemeth
certain and without ambiguity for anything that appeareth
upon the deed or instrument; but there is some collateral
matter out of the deed that breedeth ambiguity." It is
the nature of a latent ambiguity never to appear on the
face of the writing, but to lie hidden in the person or
thing or subject whereof the writing speaks.—Hand v.
Hoffman, 3 Halsted, 78. And as it is raised by extrinsic
evidence, it may fairly be dissolved by the same means.
4 Phill. Ev. 526.

In all other cases, therefore, except where the object is
to rebut an equity, or where the language of the instru-
ment is indifferently applicable to two extraneous subject-
matters, it is the duty of the court to reject direct evidence
showing how the maker *intended* the words he has used to
be understood.—4 Phill. Ev. (ed. 1850,) 522, 534, 551,
568; 5 M. & W. 369; Carrington v. Golden, 13 Gratt.
587, (593–4, 610;) Rosborough v. Hemphill, 5 Rich. Eq.
95, (105–6;) Schoppert v. Gillam, 6 Rich. Eq. 85; 1 Spence's
Eq. Jur. 560–1; Wigram, 9, 10, 76, 104; 2 Taylor Ev.
§ 854, and authorities *supra.*

Hence, when the queston to be determined is as to the

meaning of words which are not used as the symbols of something extraneous to the instrument, but are applied to matters in the context; and the court cannot, from the writing itself, as explained by the circumstances under which it was executed, ascertain the precise application which was intended, parol evidence is inadmissible to ascertain and establish such intention as an independent fact, and the instrument will be so far void for uncertainty. Wigram, 14, (6th prop.) 74–6, 65, 179; Doe v. Hiscocks, 5 M. & W. 369; 1 Greenl. Ev. § 300; Fish v. Hubbard, 21 Wend. 651, (659;) 4 Phill. Ev. 528, 571.

It follows from what has been said, that the propriety of permitting the appellee to show, by the testimony of the justice of the peace who certified the acknowledgment, that the words of the certificate were *intended* to designate the deed and not the relinquishment of dower, depends upon the inquiry, whether the reference in the certificate to " the foregoing instrument," is a reference to some extraneous object; and if so, whether it is applicable with like legal certainty to each of the instruments above named.

The two deeds, and the acknowledgment, were all written on the same sheet of paper. They were all executed about the same time—all related to the same subject-matter—and the entire paper was introduced on the trial by the appellee as one piece of documentary evidence. The certificate of acknowledgment is simply a part of this paper—a mere dependent part, which, of itself, means nothing, and becomes sensible only by its connection with what precedes it on the same sheet. There cannot be a doubt, we think, that for the purpose of construing the certificate in question, the various writings which precede it on the same paper, and with which it is expressly as, well as tacitly connected, are to be read with the certificate, as if they all together constituted one writing. 4 Phill. Ev. 517–18; Cuthbert v. Wolfe, 19 Ala. 373; Rives v. Toulmin, 19 Ala. 288. Writings thus connected can no more be subjected to the influence of parol evidence, than if they *in fact* constituted an entire instrument.—4 Phill. Ev. 519; Hall v. Adams, 1 Hill, 601.

Consequently, a reference in the certificate, to one of the preceding writings on the same sheet, is not a reference to some extrinsic object, *i. e.*, to something not to be found in any part of the paper, (21 Wend. 659,) but must be considered as relating to an antecedent part of the same context.

The very terms of the certificate show, that the object referred to is connected with it on the same piece of paper, and no more extrinsic than the *first* of several codicils of a will, all written on one sheet, would be extrinsic to those which followed it. The words, "the foregoing instrument," must be viewed, therefore, simply as words of relation, referring to antecedent matter in the context; and the case is thus brought directly within the rule, that parol evidence is inadmissible to prove to which of two antecedents a given relative was intended to refer. 4 Phill. Ev. (ed. 1850,) 529. Thus, where the testator made dispositions in his will to several persons, among others to his wife and niece, who were the only women mentioned in the will, and then devised " *to her*" a particular estate for life, the question was whether parol evidence was admissible to show which of the two was intended. The lord chancellor refused to receive it, on the ground that it would tend to put it in the power of witnesses to make wills for testators.—Castleton v. Turner, 3 Atk. 259 ; 1 Jarman on Wills, 361 ; see Abercrombie v. Abercrombie, 27 Ala. 495. So, declarations of the testator, and other evidence *aliunde*, are inadmissible, to prove what was intended by an unmeaning or senseless word ; or for the purpose of changing, to any extent, a technical rule of verbal construction ; or of reconciling conflicting clauses in a will; or of abridging or increasing the effect of words used ; or of proving that a word was used in a popular or secondary sense, when the context shows that it was employed in its primary or technical sense.—4 Phill. Ev. 529 ; Wigram Extr. Ev. 70, 139 ; Lane v. Earl of Stanhope, 6 Term R. 352 ; Field v. Eaton, 1 Dev. Eq. 283 ; 1 Spence's Eq. Jur. 566–7–9 ; 2 Phill. Ev. 334–5 ; Doe v. Westlake, 4 B. & Ad. 57 ; Barlow v. Lambert, 28 Ala. 704. All these are but illustrations of

the general principle, that parol evidence is not admissible, either to change the intention expressed in the writing, or to supply the defect which results from the use of language which is essentially so loose and imperfect as not to express any definite intent. "To define what is indefinite, is to make a material addition to the writing." Wigram, 118; 4 Phill. Ev. 528.

It being seen that, *for the purpose of construing the certificate,* all the writings on the same paper with it are to be viewed as one entire context, it follows that, if upon an examination of all of them, aided by evidence of the circumstances under which the certificate was made, it cannot be told to which of the two deeds it was intended to refer, then this would be a case of patent ambiguity, of that class which is not susceptible of explanation by parol evidence.—Authorities before cited; also, Wigram, 134–5; 21 Wend. 659; Abercrombie v. Abercrombie, 27 Ala. 495; Johnson v. Johnson, 32 Ala. 637.

Even if we were to concede, that the reference in the certificate to "the foregoing instrument," is a reference to an extrinsic object, and not to antecedent matter forming part of the same context, the decision of this court when the case was here before would be conclusive against the admissibility of the evidence under consideration. The argument for the appellee is, that the two deeds are objects extrinsic of the certificate, and that the words of the latter being applicable with like legal certainty to both deeds, parol evidence is admissible to show to which one of the two the parties actually intended to refer. In other words, the existence of the two deeds on the same paper with the certificate shows a latent ambiguity, which may be explained by direct evidence of the intention of the parties. But the former decision of this court was made upon the very evidence which, it is now insisted, shows a latent ambiguity; and it was then held, that the words of this certificate were applicable, not to the deed, but to the relinquishment. The court, therefore, in effect decided, that the existence of the two deeds on the same paper with the certificate, which is the only evidence relied on as showing a latent ambiguity in the certificate,

did not in fact have any such effect. Thus, the only ground on which the proposed evidence of the intention of the parties could, in any aspect of the case, be held admissible, was by that decision taken away; for parol evidence is not admissible to explain an asserted ambiguity, which this court, upon full consideration of the very evidence out of which it is alleged to arise, has decided has no existence.—Doe *ex d*. Hughes v. Wilkinson, 21 Ala. 296.

It having been decided when the ease was here before that the words of the certificate did not describe the deed, but did describe the relinquishment, it is clear that parol evidence was inadmissible to prove that the instrument not described was in fact the one to which the parties intended to refer.—4 Phill. Ev. 529, 571; Bell v. Morse, 6 N. H. 205; Sellwood v. Mildmay, 3 Vesey, Jr. 306; Flournoy v. Mims, 17 Ala. 36.

The court permitted the appellee to show, by the testimony of the justice of the peace, that the last certificate was made under an examination of Mrs. McBryde which had relation to the joint deed of her husband and herself, and not to the relinquishment of dower by her. This was equivalent to proving by direct evidence to which of the two deeds the certificate was intended to refer, and the court erred in permitting it to be introduced.

But, although the court erred in permitting the appellee to prove, by extrinsic evidence, that it was the intention of the parties that the certificate should refer to the deed, instead of the relinquishment; still, as the matter to be determined was the meaning and application of the words used in the certificate, it was the duty of the court to receive evidence of the condition of things in view of the parties at the time it was made. All written instruments tacitly refer to the circumstances in which their authors stand when they make them, and a knowledge of these is ancillary to the right interpretation of the language employed. By receiving evidence which shows the situation of the party, in all his relations, to persons and things around him, the court is, as it were, placed in the position of the person who used the words, and is better able to

determine their meaning and application.—1 Greenl. Ev. §§ 277, 287–8; Roseborough v. Hemphill, 5 Rich. Eq. 105.

The appellee had, therefore, the right to show what was the state of the paper, on which the certificate was written, at the time the certificate was placed there. Such evidence might affect very materially the meaning and application of the words used in the certificate. For, if when the acknowledgment was taken and certified, the deed of McBryde and wife was the only conveyance written upon the paper, it is obvious that the certificate would be referred to that deed, and not to the relinquishment of dower. Such evidence would show that, when the certificate was made, the deed of McBryde and wife was the only deed in existence, which answered the description furnished by the words " the foregoing instrument," as used in the certificate; and these words, when read by the light of this fact, would necessarily be held to mean the first deed. This would not be evidence of the intention of the parties, independent of the writing, but of a contemporaneous fact, ancillary to a right interpretation of the words of the writing.—4 Phill. Ev. 537, 573, 593 ; Haywood v. Perrin, 10 Pick. 228.

Accordingly, the court did not err in refusing to exclude from the jury the answer of the witness Parker to the 7th interrogatory, which tends to show 'that the last certificate was completed before the relinquishment of dower was written.

[2.] The rule, that a party who seeks to discredit a witness, by proof of contradictory statements made by him, must first lay a foundation for doing so, by inquiring of the witness whether or not he has made such statements, applies as well where the evidence which is sought to be contradicted is in the form of a deposition, taken under commission, as where it is given in the course of an oral examination of the witness on the trial ; nor is the application of this rule prevented by the fact, that the previous contradictory statements sought to be introduced were made under oath, and in writing. Both of the propositions above stated seem to be questioned in the opinion of Ormond, J., in Heirs of Holman v. Bank

of Norfolk, 12 Ala. 370, (408–9.) But the intimation there made, that the rule in question does not apply where the evidence which is sought to be contradicted is in the form of a deposition, is opposed to the decision of the court, upon this very point, in the case of Howell v. Reynolds, 12 Ala. 128, (131.) This last decision is, in our opinion, consonant with reason, and is supported by the great weight of authority.—See, particularly, Unis v. Charlton, adm'r, 12 Gratt. 484, and Conrad v. Griffey, 16 Howard, 38, in which the question is elaborately considered, and decided in accordance with Howell v. Reynolds, *supra.* To the same effect are Kimball v. Davis, 19 Wend. 437 ; S. C., 25 Wend. 259 ; Story v. Saunders, 8 Humph. 663 ; Jackson v. Kinsey, 7 Geo. 428 ; Hooper v. Moore, 3 Jones, (N. C.) 428.

In reference to the second proposition above stated, the intimation in Heirs of Holman v. Bank of Norfolk, (*supra,*) to the effect that the rule referred to does not apply, where the effort is to impeach the witness by the introduction of contradictory statements made by him in some former deposition, is opposed, not only to the decision in Howell v. Reynolds, (*supra,*) but also to the subsequent case of Powell v. The State, 19 Ala. 577. In the former of the two cases last cited, the court refused to permit a witness, whose deposition had been read on the trial, to be impeached by the introduction of an affidavit, previously made by him, touching the same facts, for the reason that the witness had not been examined in reference to the affidavit. And in the other case, (Powell v. The State, *supra,*) the prisoner, in order to impeach one of the State's witnesses, offered the written testimony of the witness given before the committing magistrate, as materially different from what he swore on the trial. This court held, that the evidence was inadmissible, for the reason that the witness had not first been examined, as to the time, place, and circumstances of the previous statement. See, also, Drennen v. Lindsay, 15 Ark. 359 ; 1 Greenl. Ev. §§ 462–3, *and notes ;* Wormley v. Commonwealth, 10 Gratt. 658, (688.)

A seeming exception to the general rule has been estab-

lished by this court, in cases where a party takes the deposition of a witness more than once *in the same suit*, and reads one of the depositions on the trial. It is held, that he thereby makes the previous depositions evidence, and they may be referred to by either party for the purpose of sustaining or discrediting the witness.—Carville v. Stout, 10 Ala. 796, (802;) Hester v. Lumpkin, 4 Ala. 512; see, also, Williams v. Chapman, 7 Geo. 467; Bryan v. Walton, 14 Geo. 186, (195.) The theory of these cases is, that where several depositions of a witness are taken in the same suit, they all together stand in the place of the witness, and one of them being read on the trial, inconsistent statements in the others can as well be referred to, for the purpose of impeaching the witness, without the necessity of laying the usual predicate, as if the evidence contained in all the depositions had been delivered by the witness in the course of an oral examination at the bar. In the present case, the deposition which was offered for the purpose of discrediting the witness, was taken in a *different suit*, and hence it does not fall within the exception established by the cases last cited. It follows, that the plaintiff not having laid the proper foundation for impeaching the witness by the introduction of his deposition taken in the chancery suit, the court did not err in excluding it.

Judgment reversed, and cause remanded.

A. J. WALKER, C. J.—The acknowledgment, following the relinquishment of dower, declares itself applicable to "the foregoing instrument." The defendant was permitted in the court below to show, by parol evidence, that the deed of McBryde and wife, and not the relinquishment of dower, was the instrument intended to be designated by the words, *"foregoing instrument."* The majority of the court decides that the court erred in admitting that evidence, and from the opinion on that point I dissent.

The certificate evidences the statutory acknowledgment of the execution of "the foregoing instrument." The subject of the acknowledgment is described by reference

to the extrinsic fact, that it precedes or goes before the certificate. Resort must be had to extrinsic evidence to ascertain the extrinsic fact—to determine what instrument is " the foregoing instrument" referred to in the certificate. " Where there is a devise of an estate purchased by A, or of a farm in the occupation of B, it must be shown by extrinsic evidence, what estate A purchased, or what farm was in the occupation of B, before it can be known what was devised." So here, when the acknowledgment is of the execution of the foregoing instrument, it must be shown by extrinsic evidence what was the foregoing instrument, before it can be known of what instrument the feme covert acknowledged the execution. 2 Phil. on Ev. (Cow. & Hill's notes,) ed. of 1859, 718, 738, 739 ; 2 Phil. on Ev. (ed. '50,) note 496; Sanford v. Raikes, 1 Mer. 646–653; Stubbs v. Sargon, 2 Keen, 255–265; 1 Green. on Ev. § 286; Morton v. Jackson, 1 S. & M. 494–501; Hodges v. Horsfall, 1 Russ. & Myl. 116; Ryers v. Wheeler, 22 Wend. 148 ; Blake v. Doherty, 5 Wheaton, 362; Hildebrand v. Fogle, 20 Ohio, 147; McLendon v. Godfrey, 3 Ala. 181 ; Miller v. Travers, 3 Bing. 244.

Upon looking at the extrinsic evidence adduced in this case, we find that there are two preceding or foregoing instruments; the deed of McBryde and wife, and the relinquishment of dower by Mrs. McBryde. The latter is the next preceding instrument; and if the certificate had referred to the next foregoing or next preceding instrument, the reference to the relinquishment of dower would have been indisputable, and could not have been controverted without varying the language of the certificate itself. The two instruments alike answer to the reference in the certificate, and either may be held to be the one referred to without varying the import of the certificate. The extrinsic evidence thus bringing to view two things responding to the reference in the certificate, it becomes the province of the jury to determine, in the light of extrinsic evidence, to which one of the two things reference was actually made.—2 Phil. on Ev. (ed. of 1859,) 719, note 510. Of this doctrine there are many judicial recognitions and illustrations. Where there was a grant

31

of a tract of land called *Black Acre*, and it was shown that there were two tracts by that name, it was held to be for the jury to give operation and effect to the grant, by ascertaining which tract passed. Where there was a call in the description of land for the head of *Swan Creek*, and there were two creeks called Swan Creek, and two places were set up as the head of Swan Creek, it was deemed a duty of "the jury to determine in the first case, according to the evidence, which creek was intended; and in the second, which place is the head of the creek." "So, if a tree is called for, and there are two trees set up as the call; and so, if the line of a tract of land is called for, and there are two tracts of that name, the jury are to decide, which is the tree intended, and which is the tract of land intended."—Hammond v. Ridgely, 5 Har. & Johns. 245-259; Proprietors of Claremont v. Carlton, 2 N. H. 369; Doe v. Burt, 1 Term, 395; Linscott v. Fernald, 5 Green, 496; South Carolina Soc. v. Johnson, 1 McCord, 46; 4 Starkie, 1023.

I have conceded, that if the force of the language of the certificate, "foregoing instrument," were such as to refer only to the next preceding instrument, the evidence that it was intended to apply to the deed of McBryde and wife would be inadmissible. It is contended, that the decision of this court in this case, as reported in 21 Ala. (296,) adjudges the question of the import of the language adversely to the admissibility of parol evidence, and that that decision forcloses the inquiry as to which was the instrument referred to. When that decision was made, there was no evidence before the court except the papers themselves, and upon that evidence the court was called to pass. The decision is made to rest upon the facts then before the court. The decision of the court was a conclusion inferred from the facts which the record presented to the court for its consideration. The facts then before the court, tending to the conclusion attained, and together producing the conviction announced, were, that the relinquishment of dower was in immediate juxtaposition to the certificate in question; that there was a different certificate of acknowledgment by Mrs. McBryde, as well as

her husband, to the other deed; and that if the last certificate did not apply to the relinquishment of dower, it was without acknowledgment. I do not dissent from the decision of the court upon those facts. It announced no proposition of law farther than was involved in its construction of the facts before it. It did not attempt to construe the certificate itself. It recognizes the admissibility of extrinsic evidence, by resorting to it in determining which was the foregoing instrument referred to, and pronounces a conclusion drawn from the evidence then before the court. The decision goes no farther. That decision, upon the facts then presented, can furnish no criterion for ascertaining the effect of a different state of facts, presented upon a subsequent trial, and does not announce any proposition, inconsistent with the admissibility of other evidence.—Walker v. Forbes, 31 Ala. 9.

It was permissible for the defendant to meet and rebut the *prima-facie* case made out by the testimony adduced on the former trial.

The certificates and the deeds are made by different persons, for different purposes, and at different times, and have different objects in view; and, I think, cannot be regarded as comprising one instrument. The certificate, though written on the same paper, is not a part of the same instrument with the deed or the relinquishment of dower; and the foregoing instrument is a matter altogether extrinsic of the certificate, and the phrase, *foregoing instrument*, is a reference to an extrinsic fact, and presents the case of a latent ambiguity, as defined in the opinion of the majority of the court.

If the deed of McBryde and wife, with the certificate which follows it, and the relinquishment of dower by Mrs. McBryde, with the certificate which comes immediately after it, could all be regarded as composing one instrument, then it would be clear that parol evidence to explain the meaning of the phrase, "foregoing instrument," would be inadmissible, for the ambiguity would be patent. But I do not regard the justice's certificates of the acknowledgment of instruments as parts of those instruments. The instrument is complete before the

acknowledgment is taken. The justice merely exercises a power conferred upon him by law, in certifying the acknowledgment or proof of the execution of the previously completed instrument. He is no party to the instrument, and has no power to add to it. It is totally incomprehensible to me, how the official certificate can be a part of the instrument, the execution of which it is designed to attest. It seems to me it would be quite as reasonable to say, that the probate of a will by judicial decree, and the will itself, were only parts of one and the same instrument. I know of no authority, or principle, which supports the position of my brethren in this particular. The certificate is not the act of any party to the deed. It is an independent act, of an officer appointed by law, having an independent purpose; is not a matter of contract, and can, in my opinion, with no propriety be deemed a part of the contract.