THE TOWN OF BARNET *v.* JOHN RAY AND HENRY WALKER.

*Pauper.     Evidence.     Statute.*

The first clause of Sec. 29, chap. XVIII., p. 134, Comp. Stat., in relation to bringing poor persons from one town to another with intent to charge the latter with their support, is penal, and in order to warrant a verdict for the plaintiff for the forfeiture therein described, the guilt of the defendant must be established beyond a reasonable doubt.

But the second clause of the same section, which provides that the person so removing the pauper shall be liable to pay all damages for his support, accruing to the town into which the removal is made, is merely remedial, and no such strictness of proof is requisite for a recovery by the plaintiff thereunder.

Therefore, where, in a declaration upon such section, one count declared for the forfeiture, and another for the damages merely, and a third for both the damages and the forfeiture; *Held,* that it was error to instruct the jury that in order to find for the plaintiff they must be satisfied of the defendant's guilt beyond a reasonable doubt; but that such instruction should have been confined to the first and third counts.

A pauper being chargeable upon the town of B. as a transient person therein, the overseer of the poor of that town hired the defendant to support him in the town of P. for a specified time, after the expiration of which the pauper remained in P. for some months, with the intention of residing there, and supported himself there.   *Held,* that the subsequent removal of the pauper by the defendant to B. for the purpose of charging that town with his support, was actionable under sec. 29, Chap. XVIII. p. 134, Comp. Stat.

CASE. The declaration contained three counts. The first alleged that the defendants unlawfully brought Robert Cunningham and Agnes Cunningham, his wife, two poor and indigent persons, from Peacham into Barnet without an order for their removal, and with the intent to charge the town of Barnet with their support, contrary to the statute, and that thereby the defendants had forfeited and become liable to pay the plaintiffs a sum not exceeding five hundred dollars.

The second count set forth the bringing of the same paupers from Peacham into Barnet with a similar purpose, and alleged that by reason thereof the plaintiffs had suffered damages in supporting the paupers, to wit, two thousand dollars.

The third count claimed to recover both the forfeiture, and the damages claimed by the plaintiff.

The defendants pleaded the general issue, and the cause was tried by jury, at the December Term, 1859,—POLAND, J., presiding.

It appeared on trial that Cunningham and his wife, having no settlement in this State, came to Peacham in the spring of 1853, and there lived with the defendant Ray, a son of Mrs. Cunningham, until 1855 ; that they then went to Barnet where they resided until June, 1858, when Cunningham having become paralytic, helpless and poor, the overseer of the poor of Barnet made a contract with Ray to take him and his wife to his house in Peacham, and keep them there for three months for thirty-five dollars, which Ray accordingly did, and they remained there until Jan. 29th, 1859, on which day the defendants carried them into Barnet to the house of the overseer of the poor, and there left them, after which time they were supported by the plaintiffs. During the three months for which Ray contracted to keep them, Cunningham's physical condition somewhat improved, but he was never able to do any work after he was removed from Barnet under that contract. In March, 1858, Cunningham employed one Mason to procure a land warrant to which he claimed to be entitled, under a contract that if Mason succeeded in obtaining it, he was to have one-half of the avails of it. Mason procured the warrant about the time Cunningham was removed from Barnet, and he sold it for one hundred and twenty dollars. He was also employed by

Cunningham to get some prize money, to which the latter also claimed he was entitled, and he made some efforts to obtain it, but without success. After the expiration of the three months for which Ray agreed to keep Cunningham and his wife, Mason paid to the latter fifty dollars of the proceds of the land warrant, and this sum was expended by her and the defendant Ray, for her and her husband's support.

The defendants introduced evidence tending to prove that, at the time of making the contract above described with the overseer of the poor of Barnet, Ray desired to make the contract for a longer time, but that the overseer said they would make it for three months, at the expiration of which they could make another contract if necessary ; and also that at the end of the three months Ray called on the overseer, and asked him what he was going to do about Cunningham and his wife, and that the overseer replied that Cunningham had money in Mason's hands, and that Ray must call on Mason for it.

The plaintiff introduced evidence tending to prove that the overseer said nothing about making any contract after the expiration of the three months ; that while Cunningham and his wife were at Ray's a negotiation was entered into and an arrangement partly concluded, for an exchange of Ray's place for one adjoining, and the difference was to be paid by Cunningham's share of the land warrant, and the expected prize money, and that Cunningham and his wife were to remain and live with Ray and be supported by him. and that Ray was to have the place in the end ; that Cunningham and his wife remained at Ray's after the expiration of the three months with the expectation that they were to remain and reside there permanently, but that the prize money not being obtained, the arrangement finally fell through for want of means to carry it out.

The defendants claimed and requested the court to charge the jury that as Cunningham and his wife came into Peacham and into the keeping of Ray in the manner above stated, he had the right to return them to Barnet.

Upon this part of the case, the court charged the jury that though Cunningham and his wife had no settlement in Barnet, yet if they became chargeable there, it was the legal duty of that

town to furnish their support, and if they contracted to have them kept in the town of Peacham, while they were so chargeable, their legal relation to Barnet and the legal liability of that town to support them, was not thereby changed; that if at the expiration of the contract between the overseer and Ray they were still in need of support and unable to support themselves, Ray would have the legal right to carry them back to the overseer of Barnet, and would not be liable, though he knew the result would be to make that town liable for their future support; that if when the period of this contract expired, Cunningham and his wife were able to support and maintain themselves, and chose to remain and reside in Peacham, they had the right to do so, and if they did remain there with the intention of residing there, and supported themselves for a length of time, then the liability of the town of Barnet to take them back ceased, and if they subsequently became destitute, while so residing in the town of Peacham, that town would be liable to support them, and that if under such circumstances the defendants carried them back to Barnet, with the intent to charge that town with their support, they would be liable.

To the refusal of the court to charge as requested, and to the charge as above detailed, the defendant Ray excepted.

The court instructed the jury that the rule of evidence in this case was the same as in criminal cases, and that in order to find a verdict for the plaintiffs they must be satisfied of the guilt of one or both of the defendants beyond a reasonable doubt. To this part of the charge the plaintiff excepted.

The jury returned a verdict of guilty as to the defendant Ray, and not guilty as to Walker.

*A. Underwood,* for the plaintiffs.

*Bliss N. Davis,* for the defendant Ray.

PIERPOINT, J.   In this case both parties took exceptions to the charge of the court.

The plaintiff insists that the county court erred in instructing the jury that they must be satisfied of the guilt of the defendants

beyond a reasonable doubt, (as in criminal cases,) to justify them in finding a verdict in favor of the plaintiff.

In determining this matter, it becomes necessary to inquire into the nature of the statute, upon which this action is based, in respect to its being a penal statute, or a remedial statute. The rule has long been settled in this State, that in actions brought upon penal statutes, full proof is required as in criminal cases. Whether the rule was wisely established or well sustained by authority, originally, it is not necessary for us now to inquire. It is sufficient that the rule has been long recognized and acted upon by the courts and the profession in this State, as one well settled, and that we are unable to discover any good and sufficient reason for disturbing or altering it.

In fixing the character of the statute in question, we are again relieved of much trouble, by the action of those who have preceded us, as it has already been before this court and received a judicial construction. The case of *Calais* v. *Hall*, 11 Vt. 494, was an action brought by a town to recover the damages that had accrued to the plaintiff from the bringing of a pauper into it contrary to the statute, and was based upon the last clause of the section now under consideration, which provides that the person removing such pauper, shall pay all the damage that shall accrue to the town to which the removal is made, in consequence of the support of such pauper. The *ad damnum* in the plaintiff's writ being but ten dollars, and the case having passed into the county court by appeal, was there dismissed for want of appellate jurisdiction, and the case being taken to the supreme court, the character of the statute now in question was brought directly under consideration. The learned judge in delivering the opinion in that case says : " That clause in our statute, (referring to the section now under consideration,) which gives a penalty against the person transporting the poor person, with an intent to make the town chargeable with the support of such person, is strictly penal, though the penalty is given to the party aggrieved. The clause on which this action is founded, is purely remedial. The town aggrieved recovers such sum only, as it has been compelled to expend for the support and maintenance of such poor person-

14          •

The recovery is simply an indemnity for the money paid out, and a satisfaction for the injury which has accrued, etc."

The construction of this last clause of the section was directly at issue in that case, and the decision must be considered as a full and governing authority in this case, and we think the opinion of Judge BENNETT that the first part of the section, declaring a forfeiture to the amount of five hundred dollars, was strictly penal, was clearly correct.

It comes within all the definitions that are to be found in the books, of a penal statute. It is given, to be sure, to the party sought to be injured, but the right to recover it is not made to depend upon the fact that any injury or damage has accrued. The right to recover this penalty is as perfect, upon the paupers being brought into the town, before any expense has been incurred, as it is afterwards. In no sense can it be said, that this forfeiture or penalty is inflicted by the statute, as a compensation or remedy for any injury sustained by the town. It was evidently imposed to prevent a violation of the statute, and not for the benefit of the aggrieved town.

If then this section of the statute is to be regarded as in part penal, and in part remedial, what is the effect of that conclusion upon the charge of the county court, as to the rule of proof required in this case.

The declaration contains three counts. In the first the plaintiff seeks to recover the penalty not exceeding five hundred dollars ; in the second. the damage incurred in consequence of having been obliged to support the pauper ; in the third, he seeks to recover both.

The plaintiff requested the court to instruct the jury that they were only required to establish the facts, necessary to entitle them to recover, by a fair balance of testimony. The court however told the jury they must be satisfied beyond a reasonable doubt. The request and the charge must be treated as applicable to all the counts. The plaintiff did not request the court to give the jury any different instructions on any one count from that which they asked on all, still, if they were entitled to the instructions which they asked on all, on any one, it was the

duty of the county court to give them the benefit of such instructions on that one.

Upon the first count, in which the party seeks to recover the penalty only, we think there can be no question but what the charge was correct. On the third count, in which the party seeks to recover both the penalty and the damage, we think that having elected to join the two claims in the same count, he must submit to the strictest rule of evidence that is applicable to either, and that the charge was right as to that count.

The second count is solely for the damage, to which the party may shew himself entitled under the last clause of the section referred to. This we have seen is purely remedial. Uuder it, the party seeks only his remedy in the form of damages, for such injury as he can show he has sustained. In making out his case, all the party is required to do is to establish the necessary facts by a fair balance of testimony, as in any ordinary civil case, and we think the county court erred in not so instructing the jury. This view leads to no difficulty in its practical application. It is as easy for the court and jury to apply different rules of evidence to different counts in the same declaration, as it is to apply the same rules, to like counts, in different declarations. As the result of this conclusion, the judgment of the county court as to the defendant Walker only, is reversed.

Upon a careful examination of the exceptions taken by the defendant Ray, we are unable to discover any error. The defendants claimed, that in view of the circumstances under which Cunningham and his wife were taken to Peacham, he had the legal right to carry them back to the overseer of Barnet. This would undoubtedly have been the case if he had taken them back at the expiration of the time, he had agreed with the overseer of Barnet to keep them, and perhaps he might legally have taken them back at a subsequent period, if there had been no change in the relations existing between all the parties, except such as necessarily resulted from lapse of time. But upon this question we have no occasion to pass, and we do not decide it. While Cunningham and his wife were in the care of Ray, under the agreement made with the overseer of Barnet, they had their legal abode in Barnet, and in contemplation of law are to be regarded

as having their residence there, the same as though they had actually been living within the limits of that town, and if at the expiration of the time, Ray had returned them to the overseer of Barnet, it would have been no such removal of them from one town to another, (whatever may have been his purpose,) as is contemplated by this statute. But if after the expiration of the time he was to keep them for Barnet, the relations existing between all the parties were so changed that it could no longer be said that those persons were in Peacham, as the paupers of Barnet, and having their legal residence in Barnet, as if the paupers on learning that Barnet would no longer support them, instead of returning to Barnet, had set up for themselves, turned off the town, and commenced supporting themselves from their own resources, actual and anticipated, and continued so to do for nearly five months, intending to make Peacham their permanent place of residence, then we think they would cease to be residents of Barnet, and become residents of Peacham, and that thereafter a removal of them, without warrant, with a view to make them chargeable to Barnet, would be a violation of the statute. All this seems to have been fully explained to the jury, and the question submitted to them to say, whether such a change had actually taken place or not. Whether the evidence introduced was sufficient to warrant the finding of the jury, is a question not for us to determine, inasmuch as we are not able to say, that it had no tendency to establish the fact; it was therefore properly submitted to the jury.

The exclusion of the evidence offered, of the intent of Gibson in entering into the arrangement with Ray, was clearly correct. Even if Gibson's intentions were such as to make him liable to the town of Peacham, that would not justify Ray in subsequently removing the paupers to Barnet.

The result is the judgment of the county court as to the defendant Ray is affirmed, and the judgment as to the defendant Walker is reversed, and the case remanded.