### SYLVESTER HENRY v. GILMAN HUNTLEY.

#### Evidence.   Deposition.

The defendant, an officer, attached a quantity of bark as the property of one Blush, it being in his tan-yard. The plaintiff claimed the bark, and his evidence tended to show that he purchased it of A. and had it delivered at Blush's bark mill to be ground, and that Blush had no title or interest in it. The defendant claimed that Blush purchased the bark of A., and showed, under objection, by the brother of A., that the day A. finished drawing the bark, he, the witness, was at a store near the tannery and A. came from the direction of the tannery to the store and showed him a note for about $75, signed by said Blush and no one else. It appeared from other evidence that the price of said bark was about $75. and that the last of it was drawn about the time the witness testified to seeing the note. *Held,* that the testimony objected to was admissible.

Where the name of a magistrate by whom a deposition is to be taken is inserted in the citation, the party taking the deposition cannot have it taken by another magistrate.

TROVER for a quantity of hemlock bark. Plea, the general issue, and trial by jury, September Term, 1863, Washington County, PECK, J., presiding.

It appeared that the defendant as constable attached the bark on a writ of attachment in favor of C. C. Corse against V. R. Blush, August 21st, 1858, and afterwards, as such constable, sold it on an execution issued on a judgment recovered in that suit. The question litigated before the jury was whether the bark at the time of the attachment was the property of the plaintiff or the property of Blush. It appeared that at the time of the attachment it was in the tan-yard of said Blush, where he was carrying on the business of tanning, being piled up in said yard where it was piled the winter previous by the persons who drew it, and of whom it was purchased when so drawn. No question was made but that if Blush ever was the absolute owner of the bark it was so far in his possession as to have been attachable as the property of Blush at the time the defendant attached it.

The plaintiff claimed and introduced evidence tending to show that in the winter of 1857–8, in December or January, he purchased a portion of the bark of one S. B. Atherton, who thereupon delivered and piled it in Blush's tan-yard, by the plaintiff's directions; that the plaintiff and Atherton then measured it, and that he gave his note for it, which he on the same day at some little discount, took up. And as to the residue of the bark in question the plaintiff claimed, and his evidence tended to show, that he purchased and had it delivered and measured about the same time, in the same way, and then gave his note to the seller, one Riker, and paid it to him soon after. As to both lots of bark, as well as other bark, the plaintiff's evidence tended to show that he purchased it for the purpose of sending it to market, after procuring it ground at Blush's bark mill, at said tannery; that Blush had nothing to do with the purchase of it, and never had any title to or interest in it.

The defendant claimed and introduced evidence tending to show that Blush purchased the bark of Atherton and Riker, instead of the purchase being made by the plaintiff, and that Blush purchased it in his own right, and that the plaintiff had nothing to do with the purchase, and had no title to the property, except that as to the Riker bark the plaintiff signed the note given for it with Blush, and as his surety merely,—and that Blush paid a portion of the price, and that what the plaintiff paid he paid as surety for Blush.

In the course of the trial the defendant introduced one N. A. Atherton as a witness, the brother of S. B. Atherton, and offered to show by him that the day his brother finished drawing the bark to the tannery, he, the witness, was at a store in Waterbury, a few rods from said tannery, and S. B. Atherton, who it appeared has deceased, came from the direction of the tannery to the store, and showed him a note for about $75. signed by V. R. Blush and no one else, and told him that he sold his bark to Blush and took that note for it. This was objected to by the plaintiff's counsel, and the court admitted the witness to testify to what he saw, and excluded all that was told him. It appeared from other evidence that the price of the bark bought of S. B. Atherton was about $75. and the last of it was that drawn about the time the witness testified to seeing the note. To this ruling of the court the plaintiff excepted.

The defendant offered in evidence the deposition of V. R. Blush, taken in Kansas, to which the plaintiff objected, and introduced a copy of the notice served on him, left by the officer who served the notice, and showed that it was a true copy of the original notice issued, and that no other notice was ever issued or served for taking said deposition, and no other notice given to the plaintiff. The plaintiff objected to the deposition, on the ground that the notice to take the deposition before " *Judge Brockway* " is too indefinite and uncertain, not giving his full name and office, and also because the deposition was taken before another person and officer not named in the notice.

The court *pro forma* overruled the objection, and the deposition was read in evidence. To this ruling the plaintiff excepted. Verdict for the defendant.

*L. Henry* and *Wing & Lund*, for the plaintiff.

The testimony of Atherton was improperly admitted. It had no tendency to prove that the note was given to his brother for bark sold Blush. The evidence has as much tendency to prove that Blush borrowed money of the witness as that he sold him the bark. It is the most dangerous kind of testimony. If it has any tendency to prove the issue it is too remote to be admissible. *Swampscott Machine Co.* v. *Walker*, 2 N. H. 457.

Henry *v.* Huntley.

The deposition of V. R. Blush was clearly inadmissible. *Fitts* v. *Whitney*, 32 Vt. 589.

*Dillingham & Durant*, for the defendant, maintained that A. N. Atherton's testimony was admissible. *Hill* v. *North*, 34 Vt. 616. The "time and place" of taking the deposition was given, which is all the statute requires. G. S. ch. 36, p. 556. If taken fairly it is admissible. See *Alexander* v. *Alexander*, 5 Barr. 277; *Trapnall* v. *State Bank*, 18 Ark. 53; *Williams* v. *Chadbourne*, 6 Cal. 559.

ALDIS, J. The evidence was clearly admissible. It was of facts which, when connected with the other evidence as to the amount and price of the bark and when and where sold, tended to show that Blush bought the bark. The declarations of Atherton were not admitted.

The statute, (G. S. 324, § 6,) directs, that the citation to the adverse party to attend the taking of a deposition shall state "the time and place of taking;" but is silent as to whether the name of the magistrate by whom the deposition is to be taken shall be inserted in it. The form of the citation, (G. S. p. 753,) supposes that the magistrate who is to take the deposition issues the notice, and says "to appear *before me.*" The general practice in the state has been, we think, to insert the name of the magistrate in the notice; but it has not been the universal and uniform practice. We do not decide whether it is or is not necessary to insert the name. But we all agree, that when it is inserted as it is claimed to be in this case, the party taking the deposition is not at liberty to go to another magistrate to take the deposition. Such a practice would give great opportunity for unfairness and fraud. The adverse party knowing the character and ability of the magistrate might omit to attend and send interrogatories for him to put to the witness; and thus, if the deposition were taken before another, lose the opportunity of cross-examination.

Judgment reversed and case remanded.