# GENERAL TERM,

## MONTPELIER, NOVEMBER, 1871.

[ CONTINUED FROM ANTE PAGE 169.]

---

### TOWN OF ST. JOHNSBURY *v.* WALTER GOODENOUGH.

*Gen. Stat.*, § 31, *Chap.* 20. *Pauper. Deposition. Citation. Practice.*

In an action under the statute for unduly transporting a pauper into a town, it is necessary for the plaintiffs to aver who the person was that was transported, that the defendant may know the particular charge he is to answer to, and this averment must be substantially proved. Whenever an objection of this kind is made, it may be replied that the description given is the one by which the person is generally known, and if this issue is found in favor of the description given, it is good, even though the legal name of the person may be different from the description given.

The authorization of an indifferent person to serve a citation upon a party to be present at the taking of a deposition, is a judicial act, and requires the exercise of judicial discretion, in adjudging that the precept would fail of service for want of a proper legal officer, and in deciding upon the person to serve it. Therefore such authorization by a magistrate who was counsel for one of the parties would be invalid, and the deposition taken under such a citation would be excluded.

The citation served upon a party to be present at the taking of a deposition, should state the name of the magistrate before whom the deposition is to be taken, and if not so stated, the deposition will not be admitted.

If a person takes a pauper, chargeable upon any town, out of said town under an arrangement with or by the consent of the overseer of the poor of such town, he will not be liable under sec. 31, of chap. 20 of the General Statutes, for returning said pauper to the town from which he took him, before said pauper had become chargeable to any other town.

ACTION on the case to recover the penalty for transporting Augusta Jackson, a poor and indigent person, from Danville to St. Johnsbury, without an order of removal, and the expense for the pauper's support. Plea, the general issue. Trial by jury, June term, Caledonia county, 1871, WHEELER, J., presiding.

Upon the trial it appeared that the person removed was in fact a married woman, and that her maiden name was Augusta Jackson, that she did not live with her husband, and it was not generally known that she was married, and she was known and called Augusta Jackson by the defendant and others in that vicinity, and not by the name of her husband, and that her husband was living at the time she was transported, and that he sometime afterwards took her away from St. Johnsbury where the defendant left her. Her true name by her marriage at the time of the alleged transportation, and at the time the suit was commenced, was Augusta Chantret.

The defendant claimed that the plaintiff could not recover, for that he was sued for transporting Augusta Jackson, and that the proof shows that he transported, if any one, Augusta Chantret. The court overruled the objection, to which the defendant excepted.

The plaintiff offered the deposition of the person transported, which purported to be the deposition of Augusta Jackson, which was, in fact, the deposition of the person known as Augusta Jackson, but who was Augusta Chantret, according to the name of her husband. To which the defendant objected :

1st. For that it was not signed by Augusta Jackson, or the name signed was not Augusta Jackson. The court found the signature to be that of Augusta Jackson.

2d. That there was not any such person as Augusta Jackson. She should have signed her name Augusta Chantret.

3d. That the notice served on the defendant to appear and take the deposition, was to take the deposition of Augusta Jackson. It should have been Augusta Chantret. The notice was to take the deposition of Augusta Jackson.

4th. That the notice served on the defendant was signed by Elisha May, notary public, and not otherwise. He was at that time counsel for the plaintiff in this suit, and the defendant claimed that therefore he could not issue the notice.

5th. The notice was served by John Emerson, who was the overseer of the poor, for the plaintiff. He served it as an authorized person. He was used as a witness by the plaintiff, and he testified that the suit was commenced by him and under his direction as such overseer of the poor. That he had the full control of the suit. That no other town officer had anything to do with

it. The defendant claimed that he stood in such a relation to the suit that the service of the notice by him was not a legal service.

6th. That the notice did not cite the defendant to appear before any person or authority to take the deposition. The notice did not name any authority before whom to appear to attend the taking of the deposition, but gave the time and place of taking. The defendant did not appear at the taking of the deposition.

For these reasons the defendant objected to the admission of the deposition. Objections overruled. Deposition admitted, to which the defendant excepted. The plaintiff town did not offer sufficient evidence to entitle it to recover for expense of support, and the jury were directed accordingly.

It appeared that this person had lived with the defendant, at his house in Danville, about a year, and had left and gone to a friend's house in St. Johnsbury, and was with child, and had charged the defendant's son with being the father of the child, and that her friend, at whose house she was, had called upon the overseer of the poor of St Johnsbury to take care of her, and that the overseer expected to pay for her keeping there, and that a few days before the transportation complained of, the defendant and his wife had heard of her condition, and went in search of her and found her, and with the consent of the overseer took her back to their house, where she charged another person with being the father of her child, and that soon after that the defendant carried her into St. Johnsbury and left her on the common in Paddockville.

The plaintiff's evidence tended to show that the defendant agreed with the overseer that if the overseer would consent to have him take her to his house he would take good care of her, and that she should be no expense to St. Johnsbury. The defendant's evidence tended to show that he did not so agree, but took her home with him to find out the truth about her being with child, and the father of it. The defendant requested the court to charge the jury, among other things, that if at the time the defendant took the woman from St. Johnsbury she was a pauper, the legal liability of the town was not changed by the defendant taking her away for the purpose he did, and that he had the right to carry her back and would not be liable, though he knew the town would

have to support her. The court refused to so charge, but did charge that if she was a pauper of St. Johnsbury, and was a charge upon that town, and that relation was not changed by what took place between the defendant and the overseer, and it was understood between the defendant and the overseer that the defendant was to take her as a pauper of St. Johnsbury, and he did so take her with that understanding, the defendant would not incur the penalty by returning her to St. Johnsbury.

To the refusal to charge as requested the defendant excepted. Verdict and judgment for the plaintiff. Exceptions by the defendant.

*J. P. Lamson*, for the defendant.

*Belden & May*, for the plaintiffs.

The deposition of Augusta Jackson was properly admitted. The alleged *misnomer*, the basis of the defendant's 1st, 2d and 3d objections, was a proper subject for abatement. *Boston Type, &c.*, v. *Spooner*, 5 Vt. 93 ; *Stone* v. *Cong. So.*, 14 Vt., 86 ; 29 Vt., 179 ; 16 East, 110 ; *Isaacs, Adm'r*, v. *Willey, et al.*,12 Vt., 674 ; *Vide* 12 Vt., 9 and 611, and 6 Vt., 680 ; *Litchfield* v. *Farmington*, 7 Conn., 100. Elisha May, as a *notary*, had authority to sign the citation. Gen. Stat., 234, § 5 ; *Hill* v. *Worth*, 34 Vt., 616 ; *Henry* v. *Huntley*, 37 Vt., 316. Mr. Emerson could legally serve the citation. He is no *party* to this suit. Gen. Stat., 540, § 6 ; *Lyman* v. *Burlington*, 22 Vt., 131. All that is required is that the defendant should have a copy of notice. *Smith* v. *Wilbur*, 35 Vt., 133 ; *West* v. *Walworth*, 33 Vt., 167. The statute only requires that the *time* and *place* should be stated. If the defendant suffered injury because the name of the magistrate who was to take the deposition was not inserted, then we concede the justice of the defendant's claim. *Patridge & Co.* v. *Stocker et als.*, 36 Vt., 108 ; *West* v. *Walworth, supra ; McCrellis* v. *McCrellis*, 38 Vt., 135. The charge as to the defendant's liability was unexceptionable.

84

The opinion of the court was delivered by

ROYCE, J. This was an action on the case, brought to recover the penalty given by sec. 31, of chap. 20, of the General Statutes, for transporting Augusta Jackson, a poor and indigent person, from Danville to St. Johnsbury.

The first objection made to the plaintiff's right of recovery was on account of an alleged misdescription of the person transported by the defendant. It was necessary for the plaintiff to aver in his declaration who the person was that was transported, so that the defendant might know the particular charge he was called upon to answer to, and this averment, being a material one, must be substantially proved. Whenever an objection of this kind is made, it may be replied that the description given is the one by which the person is generally known, and if this issue is found in favor of the description given, it is good even though the legal name of the person may be different from the description given. In *Williams* v. *Burgess*, 3 Taunton, 127, it was held, in a penal action, if a parish is described by its popular and well known name, it is well enough, though that is not the name of consecration. And where there is a conflict of evidence upon this question, or as to the identity of the person to whom the evidence applies with the one described in the pleadings, it is a proper mattar to be submitted to the jury, as was done in *Litchfield* v. *Farmington*, 7 Conn., 100. But here the exceptions state that she was known and called Augusta Jackson, her maiden name, and the name by which she was described in the declaration, by the defendant and others in that vicinity, and that it was not generally known that she was married. We are to understand by this language that there was no conflicting testimony on those questions, and that the name by which she was described in the declaration was the one by which she was generally known, and the one by which she was known by the defendant. The defendant then was not misled by this description, but, on the contrary, the plaintiff gave just such a description of her as the defendant would have given, if she was known and called by him by the same name. Upon principle and authority, the court were right in holding that the defendant could not defeat the right of recovery upon the

ground that he had discovered she had a husband whose name she was legally entitled to bear.

The first, second and third objections made to the deposition offered in evidence were of the same character as the one we have considered, and, we think, were properly overruled.

The fourth objection relates to the sufficiency of the notice given to the defendant of the taking of the deposition. By sec. 6, ch. 36, of the General Statutes, the party wishing to take the deposition of a witness was required to either cause personal notice to be given by the magistrate taking such deposition, to the adverse party, or a citation to be issued by a justice, to be served in the same manner as a writ of summons. The law of 1864, No. 47, altered the previous law so far as to permit the citation to be served on the adverse party to be signed by a justice, notary public or master in chancery, but did not change the manner of service. The manner of service of writs of summons is prescribed by sec. 21, ch. 33, of the General Statutes. This section provides that such writs shall be served by delivering to the defendant a true and attested copy of the same, with the officer's return thereon, or leaving such copy at the house of his usual abode, &c.

The citation to take this deposition was signed by Elisha May as notary public, who was at the time counsel for the plaintiff in the suit in which the deposition was taken to be used, and was directed to any sheriff or constable in the State, or to John Emerson, an indifferent person, and the service was made by said Emerson by delivering a true and attested copy of the summons to the defendant, with his return thereon endorsed, and attested by him as an indifferent person. Was this such a service of the citation as the law requires? Sec. 35 of chap. 31 of the General Statutes provides that where it shall be made to appear to a justice that any precept returnable to him may fail of service for the want of a proper officer seasonably to be had, he may authorize a suitable person to serve such precept. To justify the authorization of a person to serve a precept, there are two subjects upon which the justice must exercise his discretion and judgment:— first, if the precept will fail of service unless such authorization is made, and second, upon the person whom he will authorize.

And it has been determined in *ex parte Kellogg*, 6 Vt., 509, *Kellogg* v. *Paris & Paris*, 10 Vt., 261, and in *Ingraham* v. *Leland & Edmunds*, 19 Vt., 304, that the justice, in exercising such discretion and judgment, acts judicially and not ministerially, and hence that he is disqualified from the performance of any such act when he shall have been of counsel, under sec. 22, chap. 31, of the General Statutes. The case finds that the notary, who signed the citation and authorized Emerson to serve it, was at the time counsel for the plaintiff in the suit in which the deposition was taken to be used, and the same rule which disqualified a justice to make such authorization disqualified him. The law upon the subject of notice to the adverse party was not changed or altered by the act permitting notaries to sign such citations, and no authority was conferred by the act to the notary to authorize any one to serve them. In the absence of any such authority, his power over the subject would be limited by the general law, which provides the mode and manner of giving such notice. Hence we think this objection was well taken, and the deposition should have been excluded for the want of any legal notice to the defendant of the intention of the plaintiff to take it.

The fifth objection related to the competency of the person who was authorized and made the service of the citation. We are agreed that the deposition should have been excluded under the objection already noticed, and the sixth, and have not considered or decided the question arising under this.

The sixth objection taken by the defendant to the admissibility of the deposition was for the reason that the notice did not name any authority before whom to appear to attend the taking of the deposition. The question presented by this objection is one of considerable practical importance, and we are not aware that it has ever before been directly before this court; although it seems to have been virtually decided in *Henry* v. *Huntley*, 37 Vt., 316. The objection taken to the notice in that case was that the notice was to take the deposition before Judge BROCKWAY, and that it was taken before another person and officer not named in the notice. Judge ALDIS, after saying that they do not decide whether it is or is not necessary to insert the name of the magistrate in

the notice, says: " But we all agree that when it is inserted the party taking the deposition is not at liberty to go to another magistrate to take the deposition." It is difficult to see why, if the notice would have been good without the name of Judge BROCK-WAY in it, the insertion of his name would vitiate it; for, if all that is required is a literal compliance with the statute, a notice which is certain as to time and place would be good, notwithstanding it contained unnecessary matter. The form given for the notice evidently contem| lated that the name of the authority before whom the deposition was to be taken should be inserted. And the reasons assigned by the court, in the case above cited, why a party should not be permitted to go to any other magistrate to take the deposition than the one whose name is inserted in the notice, demonstrates the propriety and justice of having the name of the officer who is to take the deposition inserted in the notice. The knowledge of this fact may influence the conduct of the party against whom the deposition is taken to be used From the known character of the officer he may elect to trust him to take the deposition without an appearance upon his part. And if the officer is unknown to him, or known to be prejudiced or incompetent, he should have such notice as to be able to acquaint himself with the character of the officer in the one case, and to take all proper advantage of his incompetency or prejudice in the other. And although the statute does not in terms require that the name of the officer who is to take the deposition should be inserted in the notice, we think the spirit and intention of the statute, taken in connection with the form prescribed, do require it.

The only remaining exception is to the charge to the jury. The case is not so fully stated, in all particulars, as to enable us to determine with certainty just what evidence the charge was predicated upon. We have to assume that all that appeared upon the trial in relation to what transpired between the overseer of the poor of the plaintiff town and the defendant is detailed in the exceptions. From the exceptions it appeared that the defendant knew, when he took the pauper from St. Johnsbury to his home in Danville, that she had been chargeable to St. Johnsbury; that he took her away by consent of the overseer of St. Johnsbury; and

the only conflict that there seems to have been in the testimony was as to the terms upon which he took her—the plaintiff's evidence tending to show that if the overseer would consent to his taking her to his house he would take good care of her, and that she should be no expense to St. Johnsbury. The defendant's evidence tended to show that he did not so agree. The defendant took the pauper to his house in Danville, and soon after carried her back to St. Johnsbury and left her. The court charged the jury, among other things, that if the relation she sustained toward St. Johnsbury was not changed by what took place between the overseer and the defendant, he would not be liable for bringing her back. The portion of the statute upon which this suit is brought is highly penal, and must be construed by the rules applicable to the construction of penal statutes. In *Barnet* v. *Ray et al.*, 33 Vt., 205, the plaintiff made a contract with the defendant Ray to take the paupers from Barnet to his house in Peacham and keep them there three months ; and the court held that if they had no settlement in Barnet, that if they had become chargeable there, and they contracted to have them kept in Peacham while they were so chargeable, their legal relation to Barnet and the legal liability of that town to support them was not thereby changed, and that, if, at the expiration of the contract they were still in need of support, Ray would have the right to convey them back to the overseer of Barnet, and would not be liable though he knew the result would be to make that town liable for their future support. And Judge REDFIELD says, in the opinion : "And perhaps he might have taken them back at a subsequent period if there had been no change in the relation existing between all the parties, except such as naturally resulted from lapse of time." Admitting the facts in relation to the agreement made between the overseer and the defendant to be as the plaintiff claims them, that case is analagous to this, except in that case the contract as to the time Ray was to keep the paupers was certain ; here the time seems to have been left indefinite. It might have been claimed as of perpetual obligation, or as being determinable at the will of either party ; but in this action the defendant was entitled to the construction which would be most beneficial to himself, and

this construction would be the one which allowed him to determine the contract when he saw fit. So that if the agreement was as the plaintiff's evidence tended to show, the relations of the pauper to the town of St. Johnsbury were not so changed thereby as to subject the defendant to the penalty given by statute for conveying her back to that town before she had become chargeable to any other town, and while she was in need of relief. But by the change, the liability of the defendant was made to depend upon the question of whether the relation of the pauper to the town had been changed by what took place between the overseer and the defendant. In this we think there was error, because there was no evidence in the case that tended to show that the legal relations of the pauper to the town had been changed.

Judgment reversed, and cause remanded.